ANNA M. BRICK, as Administratrix of the Estate of
THOMAS V. BRICK, Deceased, Respondent, *v.* LONG
ISLAND RAILROAD COMPANY, Appellant.

**Ships and shipping — seamen — negligence — captain of
vessel not required to give warning to member of crew before
making sudden turn — tugboat not unseaworthy in structure
or equipment because rail extended around forward part
only of upper deck.**

1. Negligence in the navigation of a steam tugboat may not be
predicated upon failure of the captain to give warning to a member
of the crew before making a sudden turn, where there was nothing
unusual in the movement of the vessel in respect of time or manner
and nothing in the known situation to suggest to ordinary prudence
the necessity of warning.

2. The fact that the railing on the upper deck of the tug extended
around the forward part only, is no evidence that the boat was unsea-
worthy in structure or equipment. It appears that such form of
construction is so common that it must be recognized as standard,
and a boat is not unseaworthy because there are spaces where a seaman
may fall.

*Brick v. Long Island R. R. Co.*, 216 App. Div. 841, reversed.

(Argued May 9, 1927; decided May 31, 1927.)

APPEAL from an order of the Appellate Division of the
Supreme Court in the second judicial department, entered
May 7, 1926, reversing a judgment in favor of defendant
entered upon a dismissal of the complaint by the court
at a Trial Term and granting a new trial.

*Thomas J. Brennan* and *Joseph F. Keany* for appellant.
Plaintiff failed to prove unseaworthiness of the vessel
and the nonsuit was properly granted. (*Gardner* v.
*Mich. Central R. R.*, 150 U. S. 349; *Kreigh* v. *Westing-
house*, 214 U. S. 249; *Wicks* v. *Cowperthwaite*, 203 App.
Div. 705; *Cordell* v. *N. Y. C. & H. R. R. R. Co.*, 75 N. Y.
330; *Geer* v. *N. Y. & P. T. & T. Co.*, 144 App. Div. 874;

*Baulec* v. *N. Y. & Harlem R. R. Co.*, 59 N. Y. 356; *Hensen* v. *Lehigh Valley R. R. Co.*, 194 N. Y. 205; *Jones* v. *Ryan*, 125 App. Div. 282; *Searles* v. *Manhattan R. Co.*, 101 N. Y. 661; *Hanrihan* v. *Pacific Transport Co.*, 262 Fed. Rep. 951.)    There is no proof that any negligent act of the defendant was the proximate cause of the death of plaintiff's intestate. (*White* v. *Lehigh Valley R. R. Co.*, 220 N. Y. 131; *Ford* v. *McAdoo*, 231 N. Y. 155; *Francey* v. *Rutland R. R. Co.*, 222 N. Y. 482; *Heck* v. *Lehigh Valley R. R. Co.*, 241 N. Y. 210; *Maher* v. *Madison Square Garden Corp.*, 242 N. Y. 506; *Fearick* v. *Lehigh Valley R. R. Co.*, 210 App. Div. 742.)    Plaintiff's intestate voluntarily assumed the risk of going out on the upper deck if in fact he did so. (*Benzing* v. *Steinway & Sons*, 101 N. Y. 552; *Kranz* v. *Long Island Railroad Co.*, 122 N. Y. 1; *Eastland* v. *Clarke*, 165 N. Y. 420; *Southern Pacific Co.* v. *Berkshire*, 254 U. S. 415; *Boldt* v. *Penn. R. R. Co.*, 245 U. S. 441; *Fearick* v. *Lehigh Valley R. R. Co.*, 210 App. Div. 742; *Heck* v. *Lehigh Valley R. R. Co.*, 241 N. Y. 210.)

*Silas B. Axtell* and *Charles A. Ellis* for respondent. There was sufficient evidence to make it a question for the jury as to whether the tug was unseaworthy, and defendant negligent, by reason of the absence of a proper and sufficient rail. The evidence clearly showed that the rail was insufficient, in view of the location of the waste supply box. (*Standard Oil Co.* v. *De Vries*, 3 Fed. Rep. [2d] 852; *Gardner* v. *Mich. Central R. R.*, 150 U. S. 349; *Grand Trunk R. R. Co.* v. *Ives*, 144 U. S. 408; *Kreigh* v. *Westinghouse*, 214 U. S. 249; *Robert* v. *U. S. S. B. E. F. C.*, 240 N. Y. 474; *Nicholson* v. *Greeley Square Hotel Co.*, 227 N. Y. 345; *Payne* v. *Troy & Boston R. R. Co.*, 83 N. Y. 572; *Hart* v. *Hudson River Bridge Co.*, 80 N. Y. 622; *Harris* v. *Perry*, 89 N. Y. 308; *The Osceola*, 189 U. S. 158; *Chelentis* v. *Luckenbach S. S. Co.*, 247 U. S. 372; *Carlisle Packing Co.* v. *Sandanger*, 259 U. S.

255; *Lynott* v. *Great Lakes Trans. Corp.*, 202 App. Div. 113; 234 N. Y. 626.) There was sufficient evidence to make it a question for the jury whether the master was negligent in navigating the tug around the bug light in such manner as to cause sufficient lurch to throw decedent off-balance and overboard, without any warning to decedent who he knew was on the open upper deck. (*Grand Trunk Ry. Co.* v. *Ives*, 144 U. S. 408; *Gardner* v. *Michigan Cent. R. R.*, 150 U. S. 349; *Kreigh* v. *Westinghouse*, 214 U. S. 249; *Nicholson* v. *Greeley Square Hotel Co.*, 227 N. Y. 345; *Robert* v. *U. S. S. B. E. F. C.*, 240 N. Y. 474; *Hart* v. *Hudson River Bridge Co.*, 80 N. Y. 572; *Payne* v. *Troy & Boston R. R. Co.*, 83 N. Y. 572; *Harris* v. *Perry*, 89 N. Y. 308; *Standard Oil Co.* v. *De Vries*, 3 Fed. Rep. [2d] 852; *Petrone* v. *Howlett*, 237 N. Y. 394; *Lynott* v. *Great Lakes Trans. Corp.*, 202 App. Div. 113; 234 N. Y. 626; *Panama R. R. Co.* v. *Johnson*, 264 U. S. 374; *Western Fuel Co.* v. *Garcia*, 257 U. S. 233.) There was sufficient evidence from which it might be fairly and reasonably inferred that the absence of a rail, coupled with the swaying or lurch of the tug as it rounded the buoy, proximately caused decedent's fall into the water and death. What was the proximate cause of decedent's death was, therefore, a question for the jury. (*Hart* v. *Hudson Bridge Co.*, 80 N. Y. 622; *Harris* v. *Perry*, 89 N. Y. 308; *Kain* v. *Smith*, 89 N. Y. 375; *Milwaukee, etc., Ry. Co.* v. *Kellogg*, 94 U. S. 469; *Swistak* v. *Erie R. R. Co.*, 208 App. Div. 553; 239 N. Y. 549.) There was no proof upon which the court could rule that, as matter of law, decedent assumed the risk; and, if a question of assumption of risk was presented, it was a question of fact to be determined by the jury under proper instructions. (*Seaboard Air Line* v. *Horton*, 233 U. S. 492; *Dowd* v. *N. Y., etc., Ry. Co.*, 170 N. Y. 459; *The Colusa*, 248 Fed. Rep. 21; *Lynott* v. *Great Lakes Trans. Corp.*, 202 App. Div. 113; 234 N. Y. 626; *Dowd* v. *N. Y., etc., Ry. Co.*, 170 N. Y. 459; *Fitzwater*

v. *Warren,* 206 N. Y. 355; *Pierce* v. *Atlantic Gulf & Pac. Co.,* 216 N. Y. 209.)

CARDOZO, Ch. J.    The action is for negligence resulting in death.

Thomas Brick was employed by the defendant as an engineer on its tugboat, the *Patchogue.* He entered the pilot house about midnight on April 22, 1923, and asked the captain for some waste to be used in the engine room.    He was told that none was there, and went out to seek it elsewhere.    A few moments later, the boat rounded a light, listing a little in the turn.    Sailors on the starboard side of the lower deck heard something fall from the port side of the deck above, and one of them saw something which he likened to a falling shadow.    Almost at the same time a voice was heard in the water calling the captain's name.    The boat was stopped, but the fallen man could not be seen.    His dead body was found the next day.

The *Patchogue* is a tug 90 feet, 5 inches long.    Her upper deck, which is also the roof of the tug house, is protected by a railing for a space of thirty-five feet aft. Between the ventilators, and a little in front of them, is a box which was used as a receptacle for waste, oil and lamps.    This box is about three feet aft of the railing. It is more than ten feet away from the edge of the deck. The plaintiff's theory of the accident is that Brick went to the box and fell from the deck as the tug rounded the buoy.    On that assumption, fault, it is said, may be ascribed to the defendant both in navigation and in equipment.

(1) We see no evidence of negligence in the navigation of the boat.    The plaintiff argues that the captain had reason to believe that Brick was going aft for waste, and should have called out a warning before making a sudden turn.    This would indeed have been a most

extraordinary precaution. Brick was an experienced seaman. A captain, busy in steering ʾis course through the shallows of a bay, cannot reasonably be expected to take notice of the location of every member of his crew. There was nothing unusual in the movement of the vessel in respect of time or manner. There was nothing in the known situation to suggest to ordinary prudence the necessity of warning.

(2) We see no evidence that the boat was unseaworthy in structure or equipment. Many tugs have railings around the entire upper deck. Many like the *Patchogue* have railings around the forward part only. A more or less haphazard count by plaintiff's witnesses disclosed a greater number with complete railings than with partial ones, perhaps seventy-five or eighty per cent. Both forms of construction, however, are so common that they must be recognized as standard. We may not say upon the slender evidence within the covers of this record that a fifth of the tugs in the harbor are unseaworthy in build.

" Ships roll, and those who go to sea must have sea legs " (*Adams* v. *Bortz,* 279 Fed. Rep. 521). Precautions suitable in aid of passengers may be unexpected and superfluous for members of the crew. What is necessary or usual in the equipment of an ocean liner may be unusual and needless in the equipment of a harbor tug. " Seaworthiness is a relative term " (*Hanrahan* v. *Pacific Transport Co.,* 262 Fed. Rep. 951). There is no evidence how often or for what purpose the crew had occasion to go upon the part of the tug house roof unprotected by a guard. The only purpose suggested is the use of the box of waste. Indeed, counsel in effect concedes that except for this box the absence of a guard would have little or no relation to the safety of the structure. The box, however, was so located that a man might stand beside it and be all the time within easy reach of the railing to the front. Again we must remind ourselves that seaworthiness is something relative. Equipment should be suitable

when viewed in the light of reasonable probabilities, such as the extent of the use to which an unprotected section is to be put, the waters to be traversed, and generally the dangers to be feared. A boat is not unseaworthy because there are spaces here and there where a seaman, if awkward or inattentive, may find it possible to fall (*The Santa Clara,* 206 Fed. Rep. 179). The mariner on the dizzy mast has this at least in common with his sheltered brother in the harbor, that the work of each is on the waves. One who would shun their perils wholly, should stay upon the land.

The order of the Appellate Division should be reversed and the judgment of the Trial Term affirmed with costs in the Appellate Division and in this court.

POUND, CRANE, ANDREWS, LEHMAN, KELLOGG and O'BRIEN, JJ., concur.

Ordered accordingly.