## BUFFALO & GRAND ISLAND FERRY CO. v. WILLIAMS.

Circuit Court of Appeals, Second Circuit.
April 9, 1928.

No. 173.

1. Seamen ⚫⇒2—Voluntary service of one not in ferry corporation's employ in assisting in landing boat with master's acquiescence held not to make him "seaman," within statute (Merchant Marine Act 1920, § 33 [46 USCA § 688]; 46 USCA § 713; Employers' Liability Act 1908, as amended [45 USCA §§ 51—59]).

Where teamster in employ of stockholders and officers of ferry corporation was thrown overboard when his legs became entangled in mooring line, which he was handling when ferryboat was being landed, held, that his voluntary service, performed without pay, though acquiesced in by master, did not establish his contractual employment as a "seaman," within Merchant Marine Act 1920, § 33 (46 USCA § 688; Comp. St. § 8337a), and 46 USCA § 713 (Comp. St. § 8392), making applicable to seamen injured in course of employment the Employers' Liability Act 1908, as amended (45 USCA §§ 51–59; Comp. St. §§ 8657–8665).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Seaman.]

2. Seamen ⚫⇒2—If ferry corporation borrowed services of stockholders' employee, he would become "seaman" within statute (Merchant Marine Act 1920, § 33 [46 USCA § 688]; 46 USCA § 713; Employers' Liability Act 1908, as amended [45 USCA §§ 51—59]).

If services of teamster employed by stockholders and officers of ferry corporation were temporarily borrowed by ferry corporation under circumstances making it his master, he would, during performance of such services, on ferryboat, become a "seaman" in employ of corporation, within Merchant Marine Act 1920, § 33 (46 USCA § 688; Comp. St. § 8337a) and 46 USCA § 713 (Comp. St. § 8392), making applicable to seamen the Employers' Liability Act 1908, as amended (45 USCA §§ 51–59; Comp. St. §§ 8657–8665).

3. Seamen ⚫⇒29(1)—Master of ferryboat was not negligent in starting to pivot stern as soon as deckhand cast mooring line over spile, in absence of testimony respecting signal.

In absence of testimony by expert navigators that it is customary for master of ferryboat to await signal from deckhand handling mooring line before starting to pivot stern of boat in making landing, master was not negligent in beginning this operation as soon as he saw mooring line cast over spile by deckhand, since he could reasonably assume that loose end of line would be properly handled, and was not required to watch subsequent conduct of deckhand.

Appeal from the District Court of the United States for the Western District of New York.

Action by Cecelia J. Williams, as administratrix of the goods, chattels, and credits of Arthur Williams, deceased, against the Buffalo & Grand Island Ferry Company, under Merchant Marine Act 1920, § 33 (46 USCA § 688; Comp. St. § 8337a), to recover damages for decedent's death, alleged to have resulted from personal injuries caused by defendant's negligence while decedent was employed as. a seaman and engaged in the discharge of his duties as such on defendant's steam ferryboat Grand Island. To review a judgment on the verdict of a jury awarding plaintiff $9,620, and apportioning it among decedent's three children, defendant brings error. Reversed and remanded for new trial.

The ferryboat plies the Niagara river between the mainland and Grand Island. The injuries to Williams occurred shortly before 6 p. m., December 8, 1923, at the Grand Island dock, as she was making her last landing for the day. The master testified that the proper navigation in making the landing is to stop the engines when the boat is about 1,000 feet away from the wharf and heading upstream; she then drifts in toward the wharf, losing headway against the current, so that she is almost stationary when she reaches her landing place. At the upstream end of the wharf is a cluster of spiles, and as the bow comes up against them it is the duty of a deckhand to throw the mooring line around one of the spiles. One end of this line is fast to a timber head on the boat. The deckhand, after passing the line around the spile, makes a turn or two with the loose end around another timber head. When the line is thrown over the spile, the master signals to reverse on the port engine and then to come forward on the starboard engine; this works the stern in toward the wharf without moving the bow forward more than a few inches. The landing in question was made in the manner above described. The master saw Williams throw the line over the spiles; he gave the customary signals to the engineer, and the next thing he saw was Williams going overboard. The engines were immediately stopped. No other witness saw the accident. A passenger rescued Williams from the river. He was taken in an unconscious condition to the Marine Hospital at Buffalo where an examination disclosed serious injuries to his right leg and knee. After about seven weeks' treatment he left the hospital, and somewhat more than a year thereafter he was readmitted as a tubercular patient. He died there of tuberculosis on January 19, 1926. It is claimed that this disease resulted from the exposure and injuries incurred in the accident already described.

It is the theory of the plaintiff that the

master was negligent in prematurely signaling the engineer before he knew that Williams had made fast the mooring line, the loose end of which caught around his leg and dragged him overboard. The defendant contended that there was no evidence of negligence by it, and that, if Williams was caught in the loose end of the mooring line, his own negligence was the sole cause. The defendant also contended that Williams was a mere volunteer in handling the line and not entitled to the benefits of the statute.

Stanley & Gidley, of Buffalo, N. Y. (Ray M. Stanley and Arthur E. Otten, both of Buffalo, N. Y., of counsel), for plaintiff in error.

Irving W. Cole, of Buffalo, N. Y., for defendant in error.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge (after stating the facts as above). [1] The question to which we will first address our attention is defendant's contention that Williams was not a seaman within the meaning of the act under which suit was brought. On the date of accident Williams was in the employ of Fix Bros. as a teamster on their farm. He had in prior years had considerable experience as a seaman and at various times had worked as a seaman on excursion steamers and other vessels owned by Fix Bros. The vessel upon which he was injured was not owned by them but by the defendant corporation, of which they were stockholders and officers. There was testimony that he had worked as a deckhand on the Grand Island at prior times. On the morning of December 8, 1923, he had been instructed by his employers to drive a team on the farm. Without further instructions, he came aboard the ferryboat early in the afternoon, and, without protest by the master, he rode back and forth while several round trips were made between the mainland and the island. The boat had a complete crew, consisting of captain, engineer, fireman, and three deckhands, and her full crew was on board at the time of the accident. The master testified that Williams was not employed on the boat and that he gave him no orders. He admitted that he saw Williams handle the mooring line on two occasions during the afternoon; the first about two hours before, the second when he was injured. The young woman who acted as paymaster testified that he was not paid as a member of the crew. Apparently he was a licensee upon the boat and a volunteer in handling the mooring line, and the question whether voluntary service of a maritime nature entitles one who is injured while performing it to the benefits of the act is squarely raised by exception to the court's charge:

"That, if his voluntary service was with the master's consent or acquiescence, he or his administratrix became entitled to the same legal rights that a seaman regularly employed would have, namely, the vessel owner is liable for negligent navigation in consequence of which an injury was sustained resulting in his death."

The Jones Act by the section in question makes applicable to personal injuries suffered by any seaman "in the course of his employment" the Employers' Liability Act of April 22, 1908 (35 Stat. 65), and its amendments (45 USCA §§ 51–59; Comp. St. §§ 8657–8665). Jurisdiction in such actions is declared to be in the court of the district in which "the defendant employer" resides or has his principal office. As stated by the Supreme Court in Panama R. R. Co. v. Johnson, 264 U. S. 375, 387, 44 S. Ct. 391, 394, 68 L. Ed. 748:

"The statute is concerned with the relative rights and obligations of seamen and their employers arising out of personal injuries sustained by the former in the course of their employment."

It does not purport to change the definition of "seamen" so as to do away with the necessity of a contractual relation of employment to serve on board a vessel (Comp. Stat. § 8392 [46 USCA § 713]); nor to extend its benefits to any passenger or licensee aboard who may volunteer to do a single act of a character such as is usually performed by a member of the crew. It cannot be construed to do so. It is true that judicial interpretation of the term "seaman," liberally keeping pace with modern methods of navigation, has included within its meaning stevedores, firemen, wireless operators, and others performing service for a ship's voyage who would not originally have been classified as seamen when that word meant mariners in the true sense. Internat. Stevedoring Co. v. Haverty, 272 U. S. 50, 47 S. Ct. 19, 71 L. Ed. 157; The North American, Fed. Cas. No. 10314; The Buena Ventura (D. C. N. Y.) 243 F. 797; The Hurricane (D. C. Pa.) 2 F.(2d) 70; The Sea Lark (D. C. Wash.) 14 F.(2d) 201. But in all such cases where responsibility has been imposed upon a ship or a person, the rights of those classed as seamen have resulted from a contractual engagement to serve upon a ship. Williams' voluntary service with the knowl-

edge of the master falls far short of a contractual engagement. Shea v. Gurney, 163 Mass. 184, 188, 39 N. E. 996, 47 Am. St. Rep 446; Grissom v. Atlanta, etc., Ry., 152 Ala. 110, 44 So. 661, 13 L. R. A. (N. S.) 561, 126 Am. St. Rep. 20; Richardson v. Babcock & Wilcox Co., 175 F. 897, 898 (C. C. A. 1). Bringing into the law applicable to seamen new rules drawn from the statutes relating to railroad employees cannot affect the principle that a seaman's rights grow out of such a relationship. Indeed, the Employers' Liability Act itself extends its benefits to employees of railroads only when there exists "the conventional relation of employer and employee." See Robinson v. Balt. & Ohio R. R., 237 U. S. 84, 94, 35 S. Ct. 491, 59 L. Ed. 849; Hull v. Phila. & Reading Ry. Co., 252 U. S. 475, 479, 40 S. Ct. 358, 64 L. Ed. 670; Grissom v. Atlanta, etc., Ry., supra.

In instructing the jury, not that they might, but that they must, find Williams to have been entitled to the rights of a seaman under the act if his voluntary service was performed with the consent or acquiescence of the master, the court committed error which requires a reversal of the judgment.

[2] We do not mean to say, however, that under no circumstances could the plaintiff recover without showing a formal contract of employment between Williams and the defendant. Though in the general employment of Fix Bros. and paid by them, facts may exist which would justify an inference that his services were borrowed for the time being by the ferry corporation under circumstances which would make it his master. If such were the case at the time of the accident, we think he would become a seaman within the employ of the defendant for the purposes of the statute. See Standard Oil Co. v. Anderson, 212 U. S. 215, 221, 29 S. Ct. 252, 53 L. Ed. 480; Linstead v. Ches. & Ohio Ry. Co., 275 U. S. ——, 48 S. Ct. 241, 72 L. Ed. ——, decided February 20, 1928; The Commandant (D. C. Md.) 23 F.(2d) 100. But even if the evidence were deemed sufficient for the jury upon this theory, the case was not so submitted, and the instruction goes far beyond it.

[3] As the case must be remanded for a new trial, we think we should also express our view that there was no proof of negligence sufficient to go to the jury, even if the decedent were deemed a seaman within the meaning of the statute. There was no proof of more than the ordinary operation of landing. The boat came into the dock with no excessive speed and made no unexpected movements. The decedent had an opportunity to throw, and did throw, the mooring line securely around the spile. No one expects a ferryboat to be perfectly still before the mooring line is cast, and no accident could have happened unless Williams had gotten his feet entangled in the line when he was taking a turn around the timber head. In the absence of testimony by expert navigators that it is customary for the master to await a signal from the deckhand handling the mooring line before starting to pivot the stern, we do not think there was any proof that it was negligence for the master to begin this operation as soon as he saw the mooring line cast over the spile. He has more important duties in directing the final steps in the maneuver of landing than to watch the subsequent conduct of the deckhand, and he may reasonably assume that the loose end of the line will be properly handled. See Brick v. Long Island R. R. Co., 245 N. Y. 222, 157 N. E. 93. Unless affirmative proof can be made to the contrary, we think it should be ruled that the master's operation of the boat was free from negligence. As the proof stood, the decedent's injuries resulted solely from his own lack of care.

It is unnecessary to consider other assignments of error. The judgment is reversed, and the cause remanded for a new trial.