**DIOMEDE et al. v. LOWE, Deputy Com'r, et al.**

No. 138.

Circuit Court of Appeals, Second Circuit.

Jan. 4, 1937.

E. C. Sherwood, of New York City (William B. Davis, of New York City, of counsel), for appellants Moran Bros. Contracting Co., Inc., and Travelers Insurance Co.

S. Joseph Corrao, of Brooklyn, N. Y., (John F. O'Neil, of New York City, of counsel), for appellees.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

Nicholas Diomede, employed by the appellant Moran Bros. Contracting Company, Inc., for fifteen years, was in charge of a dump scow known as the Moran No. 18. This scow was used to transport ashes, mud, and refuse from piers within the harbor of New York to the dumping grounds beyond the harbor limits, and, being without means of self-propulsion, was towed by tugs of the Moran Company. The scow was equipped with a cabin used by the decedent, who was required to remain on board at all times except when special permission was granted. His pay was $1 a day and extra compensation of $3 per day when the scow was loading or on voyage. July 25, 1934, the scow was towed out into the harbor destined for a point beyond the harbor limits, but while it was still within the harbor the decedent accidentally fell overboard and was drowned.

It was found below that the duties of the decedent "were to supervise the loading of the scow so that the cargo would be evenly distributed and the scow ride on even keel; to be watchful lest the scow become unseaworthy; to make minor repairs to prevent the same; to pump out water which leaked into the barge; to unfasten the lines from the dock to the scow when voyages were begun; to make fast the lines from the tow boat to the scow; to lengthen and shorten the lines between the tow and the scow when necessary enroute; to tie up the scow to the dock upon return from a voyage; to open and close the hatches of the scow; to dump the cargo upon arrival at the dumping grounds; to splice the lines when necessary, and to keep running lights in order and visible." The decedent was the only person working on the scow.

The sole question presented is whether the decedent comes within the clause of the Longshoremen's and Harbor Workers' Compensation Act (44 Stat. 1426, c. 509, § 3 (a) (1), 33 U.S.C.A. § 903 (a) (1), which excludes from its provisions "a master or member of a crew of any vessel." Concededly the death occurred upon navigable waters of the United States, and the appellees are entitled to a judgment if the excepting clause is inapplicable.

In Nogueira v. New York, N. H. & H. R. Co., 281 U.S. 128, 136, 50 S.Ct. 303, 305, 74 L.Ed. 754, the court, in referring to the legislative history of the excepting clause, said: "It appears that the bill originally excluded a master or members of a crew of a vessel, but was amended so as to extend to them the benefits of compensation. House Rep. No. 1767, 69th Cong. 2d Sess. As these seamen preferred to remain outside of the provisions of the bill, they were finally excluded, and the bill was passed with the exceptions above-quoted."

Seamen, therefore, retained their rights under the maritime law and the right of election under the Jones Act (41 Stat. 1007, 46 U.S.C.A. § 688) to bring an action under the Federal Employers' Liability Act (45 U.S.C.A. § 51 et seq.). In making the exception in question, the Longshoremen's Act drew a distinction between "seamen" and "harbor workers" which must be applied consistently with its scope and purpose. The character of the exceptions, as pointed out in the Nogueira Case, is limited; and the purpose of the Act was to comprehensively cover the field which only the federal government could constitutionally regulate (Southern Pacific Co. v. Jensen, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086, L.R.A.1918C, 451, Ann.Cas.1917E, 900; Knickerbocker Ice Co. v. Stewart, 253 U.S. 149, 40 S.Ct. 438, 64 L.Ed. 834, 11 A.L.R. 1145; Washington v. Dawson & Co., 264 U.S. 219, 44 S.Ct. 302, 68 L.Ed.

646; Nogueira v. New York, N. H. & H. R. Co., supra), giving the fullest permissible effect to state legislation as to local matters only incidentally connected with navigation and commerce. See Union Oil Co. v. Pillsbury (C.C.A.) 63 F.(2d) 925.

■ Appellant contends that the Longshoremen's Act does not afford a remedy since the decedent was either a master or a member of a crew. We are therefore concerned with the meaning of these terms in view of the legislative considerations which we have mentioned and in view of the liberal construction which must be given to the statute because of its remedial character. De Wald v. Baltimore & O. R. Co., 71 F.(2d) 810 (C.C.A.4).

■ In The A. H. Chamberlain, 206 F. 996, 998 (D.C.E.D.N.Y.) in a well-considered opinion, the District Judge said, speaking of the status of one who was in charge of a scow: "The captain of a scow or barge, who does the work of a deckhand, and does not have the right to control the vessel's movements nor employment, and can act only as agent, in the sense that any sailor might act under specific direction of his captain, is not a master."

We agree and think it impossible to classify an employee in charge of a dump scow, a boat without means of self-propulsion, and unmanned except for its "captain," as the master of a vessel. De Wald v. Baltimore & O. R. Co., supra. A "master" without men to command, without a ship to navigate, and subject to the orders of the tug captain when the scow is in tow, is a notion difficult to accept and untenable when it is sought thereby to exclude the decedent from the remedy provided by the Act.

Nor was the decedent the member of a crew. A watchman on a vessel in port is not a seaman excluded by the statute. Union Oil Co. v. Pillsbury, supra; Seneca Washed Gravel Corporation v. McManigal, 65 F.(2d) 779, 780 (C.C.A. 2). Neither is one who is employed to stencil identifying marks on cross-ties on a barge. T. J. Moss Tie Co. v. Tanner, 44 F.(2d) 928 (C.C.A. 5). In Seneca Washed Gravel Corporation v. McManigal, supra, we defined the word "crew" as used in the statute: "The word 'crew' is used in the statute to connote a company of seamen belonging to the vessel, usually including the officers. It is the

'ship's company.' United States v. Winn, 28 Fed.Cas. p. 733, No. 16,740. The crew is usually referred to and is naturally and primarily thought of as those who are on board and aiding in the navigation without reference to the nature of the arrangement under which they are on board. The Bound Brook (D.C.) 146 F. 160, 164; The Buena Ventura (D.C.) 243 F. 797, 799."

De Wald v. Baltimore & O. R. Co., supra, adopted this definition. The facts of that case are not materially distinguishable from the instant case. There the decedent worked on barges and scows; his employment differed only in two respects. He lived ashore and reported each morning and was given work on an average of three days per week; and the barge or scow did not go beyond Baltimore harbor. The court there held that he was not a member of the crew within the fair and common meaning of the words used in the excepting clause. See, also, Harper v. Parker, 9 F.Supp. 744 (D.C.D.Md.). The fact that the decedent lived aboard the scow and made trips beyond the harbor limits does not suffice to make him a member of a crew—a seaman within the meaning of the Act; nor does the fact that when outside the harbor limits he was exposed to the perils of the sea. We do not attempt to state the precise grouping of facts which render the excepting clause applicable; it is sufficient to say that here the decedent falls more properly within the category of a harbor worker than that of seaman, and we are convinced that in so holding we carry out the purpose of the Act.

■ The rule In re O'Donnell, 26 F.(2d) 334 (C.C.A. 2), that the tug and barges together constitute one vessel under the Harter Act (46 U.S.C.A. §§ 190–195), and all must therefore be seaworthy, has little bearing upon the question before us. Assuming that the flotilla were to be regarded as a "vessel" within the meaning of the excepting clause, nevertheless the question whether the decedent was the member of a crew must be determined solely from the nature of the decedent's employment with relation to the scow upon which he worked.

■ By section 28 of the Act, 44 Stat. 1438, 33 U.S.C.A. § 928, we have power to award appellees' counsel a fee for legal services. We have noted his professional work and fix the amount accordingly at $500.

Judgment affirmed.