**MOORE DRY DOCK CO. v. PILLSBURY et al.**

**No. 8792.**

Circuit Court of Appeals, Ninth Circuit.

Nov. 30, 1938.

Emmet Cashin and Harold M. Sawyer, both of San Francisco, Cal., for appellant.

Frank J. Hennessy, U. S. Atty., and S. P. Murman, Asst. U. S. Atty., both of San Francisco, Cal., for appellee Warren H. Pillsbury.

Before GARRECHT and HANEY, Circuit Judges, and ST. SURE, District Judge.

GARRECHT, Circuit Judge.

This suit was brought by appellant, Moore Dry Dock Company, to set aside an award made by appellee, Warren H. Pillsbury, Deputy Commissioner of the United States Employees' Compensation Commission for the 13th Compensation District, under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq., and for a temporary and permanent injunction to enjoin the enforcement of said award.

On March 21, 1936, William H. Howland, husband and father of appellees, Margaret and Kenneth Howland, while performing services for appellant as an employee aboard its certain power launch or tug, known as the "Moore No. 2," then lying on the navigable waters of the United States at appellant's shipyard, sustained personal injury occurring in the course of and arising out of his employment and resulting in his death, in that, while making some repairs on the deck of the launch to certain of its equipment, he fell into the water and was drowned.

Relative to decedent's employment, the following appears:

Moore Dry Dock Company, a self-insurer, was engaged in the operation of a ship building and ship repair plant situated on the Oakland Estuary, in the County of Alameda, State of California. In the course of the conduct of its business appellant operated the "Moore No. 2" for the purpose of assisting vessels in and about appellant's shipyard and on and off drydock and in occasional errands for its employer only about San Francisco Bay.

The "Moore No. 2" required for its operation two men, one of whom was Captain Marshall and the other Howland. Howland's duties—handling lines, mooring and unmooring the launch, keeping it clean, making small repairs, serving on it while assisting ships entering or leaving the drydock—were severally characterized as those of a deckhand. The "Moore No. 2" never went to sea but in its occasional trips about San Francisco Bay had gone as far as South City, South San Francisco, hauling pipes, and had been on inland waterways as far as Stockton.

Deceased had been employed by the Moore Dry Dock Company for several

years and had been carried on the payroll as a rigger and was paid at an hourly rate for such work as was available for him in appellant's shipyard at rigger's wages. However, most of his working time was in connection with the launch, although infrequently he was given work as a rigger on land, not in connection with said launch.

Howland ate and slept at home as there were no accommodations therefor on the launch, usually worked an eight hour day but occasionally worked overtime and was paid for the additional hours. When work was slack he was laid off. His time was kept in the office on the dock.

On March 21, 1936, while thus employed, Howland met his death. No one saw the accident, Captain Marshall testified that he had left the launch for a short time and when he returned Howland was not on the boat. His body was taken from the estuary three days later.

The Deputy Commissioner made a finding to the effect that "the employment of said employee was essentially that of a harbor worker and not that of a seaman as said term is used in the Longshoremen's and Harbor Workers' Compensation Act and that he was not a member of the crew of the vessel at the time of his injury and death", and entered an award in favor of appellees, Howland. Appellant thereupon filed its complaint in equity in the United States District Court for a decree suspending the award and for the issuance of an injunction restraining the enforcement of the compensation order and award of compensation. Appellant also sought a temporary injunction pending final determination of the cause. On November 22, 1937, the District Court entered a final decree affirming its earlier order denying appellant's application for a temporary injunction, dismissing appellant's complaint and supplemental complaint and affirming the award of the Deputy Commissioner. From this decree the present appeal is taken.

The Longshoremen's and Harbor Workers' Compensation Act, § 3, 33 U.S.C.A. § 903, provides:

"(a) Compensation shall be payable under this chapter in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any dry dock) and if recovery for the disability or death through workmen's compensation proceedings may not validly be provided by State law. No compensation shall be payable in respect of the disability or death of—

"(1) A master or member of a crew of any vessel, * * *."

The question here raised is, whether decedent Howland, at the time of his death, was an employee under the Act or excepted from it as a "member of a crew of any vessel."

Appellant, in its brief, contends that: "The 'Moore No. 2' was, at the time of the death of Howland, a licensed vessel of the United States carrying a crew of one excluding the master and engaged exclusively in maritime employment. Howland was employed by appellant as a deckhand on said vessel for a period of at least two years prior to his death and spent the great bulk of his time in the performance of the duties of a deckhand on board said vessel. He was the one crew-man, excluding the master, specified in the vessel's license. His duties were all maritime with the exception of a negligible amount of time engaged in working on land. He was, therefore, a member of a crew within Section 3, subd. (1) of the Longshoremen and Harbor Workers' Compensation Act and hence not within its operation. The Deputy Commissioner, therefore, had no jurisdiction to make the award under review."

With this conclusion of appellant we cannot agree. Although the Courts thus far have not formulated a precise statement from which it can at once be determined just when an employee is a member of a crew and when he is a harbor worker, they are in agreement upon the principle that Congress, in the enactment of the Longshoremen's and Harbor Workers' Compensation Act, intended to except from the operation thereof only those employees ordinarily and generally considered as seafaring men, leaving that fact to be determined by the circumstances of each case. Mr. Chief Justice Hughes, in the case of Nogueira v. New York, N. H. & H. R. Co., 281 U.S. 128, 50 S.Ct. 303, 74 L.Ed. 754, commenting upon the legislative history of the Act, among other things, says at page 136, 50 S. Ct. at page 305:

"When the bill which became the Longshoremen's and Harbor Workers' Compensation Act was pending in Congress, the importance of the policy of compensation acts, and their advantages in providing for appropriate compensation in the case of injury or death of employees, without regard to the fault of the employer, were distinct-

ly recognized. It appears that the bill originally excluded a master or members of a crew of a vessel, but was amended so as to extend to them the benefits of compensation. House Rep. No. 1767, 69th Cong., 2d Sess. As these seamen preferred to remain outside of the provisions of the bill, they were finally excluded, and the bill was passed with the exceptions above-quoted. Cong.Rec., 69th Cong., 2d. Sess., vol. 68, pt. 5, 5908. * * *"

In the case of Diomede v. Lowe, 2 Cir., 87 F.2d 296, 297, after quoting the above, the court went on to say: "Seamen, therefore, retained their rights under the maritime law and the right of election under the Jones Act (41 Stat. 1007, 46 U.S.C.A. § 688) to bring an action under the Federal Employers' Liability Act (45 U.S.C.A. § 51 et seq.). In making the exception in question, the Longshoremen's Act drew a distinction between 'seamen' and 'harbor workers' which must be applied consistently with its scope and purpose."

This distinction is well illustrated in the case of C. Flanagan & Sons v. Carken, Tex.Civ.App., 11 S.W.2d 392, 394. There the Court, in commenting upon this difference, used the following language: "A stevedore or longshoreman has no contract with the ship. He has not bound himself to its service. He does not serve as a member of its crew, but performs for an independent contractor a duty that formerly was ordinarily done by the crew, not upon the high sea, but at the ship's destination, minus the perils of the voyage. He does not undergo the hardships and dangers, nor does he surrender the personal rights and liberties that a seaman does in binding himself to the vessel as a member of its crew in exchange for the right of maintenance, care, and wages flowing to the seaman by virtue of his contract to serve the ship."

In the light of these decisions Howland could not be classified as a seaman so as to exclude him from the operation of the Act. He was hired as a rigger; his contract was not with the captain of the vessel but with the company officials on the drydock; he was not paid on a monthly basis, but by the hour, receiving extra pay for over time and being laid off when work was slack; his time card was kept not by the captain of the launch but by the company timekeeper on shore; he neither ate nor slept on board the launch as it contained no accommodations therefor. We be-

lieve, therefore, that Howland must be classified in the category of a harbor worker and not that of a seaman. To hold otherwise and to extend the exclusion clause of the Act to include a worker of the type of Howland would be to give to the Act a meaning not intended by Congress. See De Wald v. Baltimore & O. R. Co., 4 Cir., 71 F.2d 810, 813; Diomede v. Lowe, supra.

Decree affirmed.