### BERWIND–WHITE COAL MINING CO. v. ROTHENSIES, Collector of Internal Revenue.

No. 1459.

District Court, E. D. Pennsylvania.

May 15, 1942.

Barnes, Myers & Price, of Philadelphia, Pa. (Charles Myers, of Philadelphia, Pa., of counsel), for plaintiff.

Gerald A. Gleeson, U. S. Atty., and Thomas J. Curtin, Asst. U. S. Atty., both of Philadelphia, Pa. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Andrew D. Sharpe and Donald J. Marran, Sp. Assts. to Atty. Gen., of counsel), for defendant.

KALODNER, District Judge.

Section 811 (b) (5) of the Social Security Act, August 14, 1935, c. 531, Title VIII, 49 Stat. 639, 42 U.S.C.A. § 1011, exempts from the scope of the Act " * * * Service performed as an officer or member of the crew of a vessel documented under the laws of the United States or of any foreign country; * * *."[1]

The issue here presented is:

Are "barge captains" employed by the plaintiff exempt from social security taxes "as an officer or member of the crew" within the exemption above stated?

The issue is raised by plaintiff's suit to recover $1,800.26, together with interest, paid to the defendant as Social Security taxes for the calendar years 1937, 1938, and 1939. The suit was instituted following the Commissioner's rejection of plaintiff's claim for refund.

The case was submitted to the court upon the pleadings, stipulation of facts, and additional testimony. A jury trial was waived.

### Findings of Fact.

The stipulated statement of facts, which is hereby adopted as the findings of fact of this court, in part, is as follows:

1. Plaintiff at all times herein mentioned was, and now is, a corporation duly organized and existing under the laws of the Commonwealth of Pennsylvania.

2. At all times herein mentioned plaintiff was engaged in the business of mining, shipping and selling coal.

3. During the calendar years 1937, 1938, and 1939, plaintiff owned and operated certain coal barges, each of which was non self-propelled, and was enrolled at the Port of New York under the provisions of 46 U.S.C.A. §§ 251 to 254, and duly licensed to carry on the coasting trade under 46 U.S.C.A. § 262—a consolidated certificate of enrollment and license pursuant to 46 U.S.C.A. § 260, having been issued for each of said barges by the Collector of Customs of the Port of New York. Attached to plaintiff's complaint, marked "Exhibit A", is a statement setting forth the barge number, official number, length, net tonnage, and date of enrollment of each of said barges.

4. During said years plaintiff employed a barge captain on each of said barges, who was in sole charge of said barge and its cargo.

5. On July 31, 1939, plaintiff filed with defendant at Philadelphia reports on Forms SS–1b and SS–1c setting forth the name of each of said barge captains, his social security number, the wages paid to him, and the period covered by said payment, together with a summary or recapitulation showing the total wages paid to said barge captains from January 1, 1937, to June 30, 1939. Copies of said reports marked "Exhibit B" are attached to plaintiff's complaint. During said period plaintiff paid its said barge captains total wages or compensation of $90,012.95.

6. On July 31, 1939, plaintiff paid to defendant the sum of $1,800.26 as the tax imposed by Title VIII, Sections 801 and 804 of the Act of Congress approved August 14, 1935, 42 U.S.C.A. §§ 1001, 1004, on said payments of $90,012.95 made to plaintiff's said employees.

7. On November 27, 1939, plaintiff filed with defendant a claim for refund of said tax of $1,800.26 paid by it as aforesaid on July 31, 1939, a copy of which claim for refund marked "Exhibit C" is attached to plaintiff's complaint. The Commissioner of Internal Revenue of the United States by a letter to plaintiff dated September 11, 1940, notified plaintiff that its said claim for refund was disallowed in full, a copy of which letter, marked "Exhibit D", is attached to plaintiff's complaint.

8. The said payment of tax of $1,800.26 cannot be adjusted under Sections 802 (b) or 805 of said Act of Congress of August 14, 1935, 42 U.S.C.A. §§ 1002 (b) and 1005.

---

[1] The exception of "an officer or member of the crew of a vessel" was eliminated by the amendments made by the Act of August 10, 1939, c. 666, Title II, as to employment after December 31, 1939. See 42 U.S.C.A. § 409 (b).

In addition to the stipulated facts, the court makes the following special findings of fact:

9. During the years 1937, 1938 and 1939 the plaintiff owned and operated thirty-four barges and two tugs which it employed in transporting coal from its dock to various points in New York Harbor. The barges had no steering apparatus and were towed from place to place by the company's tugs. The trips taken by the barges were usually very short—no trip lasting more than six hours from dock to dock in the harbor.

10. The barge captains operated the barges alone in the course of transportation and were the only persons aboard the barges at the time of loading and unloading.

11. The duties of the barge captains consisted of supervising the loading and unloading of barges, watching for leaks, pumping bilge-water, and setting up and taking down running lights. The captains also checked on the tow lines between the barges and the tugs, and reported to the tugs if there was a break in the line in the course of transportation. In addition, the captains handled the lines with which the barges were attached to the tugs and the docks.

12. Plaintiff's barges varied in size, having a capacity of from 400 to 1600 tons of coal, and drew from 12 to 17 feet loaded. Each barge was equipped with running lights, bells, fog horn, life preservers and bilge pumps. The barges were used for taking coal to other vessels and industrial plants within the confines of New York Harbor. There were living accommodations consisting of two rooms on each barge, and some of the captains lived on board, while others lived on shore.

13. The barge captains were employed, and paid, by the month.

14. The barge captains employed by the plaintiff during the years 1937, 1938, and 1939 were usually men with some maritime experience, although a few of them had no such experience at the time of employment.

15. The barge captains had no responsibility for the navigation of the barges. The responsibility for the navigation of the barges was wholly upon the captain of the tug during the course of transportation, with the exception that the barge captain performed the duties hereinbefore mentioned with respect to the tow line, leaks, pumping of bilge-water, and the setting up and taking down of running lights.

In addition to the foregoing special findings of fact, the court affirms plaintiff's requests for findings of fact Nos. 1, 2, 3, 4, 5 and 6.

## Discussion.

The facts are virtually undisputed. The controversy results from conflicting interpretations as to the meaning of the words, "officer or member of the crew".

The plaintiff contends that barge captains come within the meaning of the phrase; the defendant contends otherwise on the premise that the barge captains take no part in the navigation of the vessel and are merely employed as stevedores and caretakers of the barges.

The Commissioner of Internal Revenue, under authority conferred by the act, issued regulations on November 6, 1936 (Regulations 91) defining in Article 10 the meaning of Section 811(b) (5) of the Act.

Article 10 reads as follows:

"Art. 10. Officers and members of crews.—The expression 'officers and members of the crew' includes the master or officer in charge of the vessel, however designated, and every individual, subject to his authority, serving on board and contributing in any way to the operation and welfare of the vessel. The exception extends, for example, to services rendered by the master, mates, pilots, pursers, surgeons, stewards, engineers, firemen, cooks, clerks, carpenters, deck hands, porters, and chambermaids, and by seal hunters and fishermen on sealing and fishing vessels.

"The word 'vessel' includes every description of watercraft or other contrivance, used as a means of transportation on water. It does not include any type of aircraft.

"The expression 'vessel documented under the laws of the United States or of any foreign country' means a vessel which is registered, enrolled, or licensed in conformity with the laws of the United States or any foreign country."

Under the circumstances here the court is confronted then with a problem of statutory construction. The legislative history affords little aid in a determination of the question.

In the House report of the bill (published in Internal Revenue Cumulative Bulletin 1939—Part 2, p. 600) there appears the following statement in explanation of the

exclusion of officers and members of the crew: "Services performed by an officer or a member of a crew on a vessel documented under the laws of the United States or of any foreign country are also exempt from the taxes imposed by this title. The administrative difficulty of following the wages of officers and seamen of crews was regarded as almost unsurmountable. For instance, unless this exemption were granted, it would be necessary to keep track of the wages of Chinese coolies working on American ships."

It is interesting to note that the Senate attempted to amend the House bill by eliminating the exclusion of officers and members of the crew, but finally concurred in the House provision providing for the exclusion. The report of the Conference Committee (reported at p. 626 of the said Cumulative Bulletin) contains no further comment with respect to the exclusion for "officer or member of the crew" other than "the Senate recedes" from its position on this point.

The defendant vigorously contends that the phrase "officer or member of the crew" had acquired a definite and restricted meaning at the time of its inclusion in Title VIII of the Social Security Act; that the phrase was taken from the comparable exemption of "master or member of a crew" contained in the Federal Longshoremen's and Harbor Workers' Compensation Act, c. 509, 44 Stat. 1424, § 2(3), 33 U.S.C.A. § 902(3), and that this court should look to the interpretation given to the latter phrase by the Supreme Court of the United States in South Chicago Coal & Dock Co. et al. v. Bassett, Deputy Commissioner, 1940, 309 U.S. 251, 60 S.Ct. 544, 84 L.Ed. 732, and in other cases in various lower courts.

In the South Chicago Coal & Dock Co. case, the employee involved worked on a lighter which supplied coal for fueling steamboats and other marine equipment. The principal functions of the employee were to facilitate the flow of coal and incidental duties, including throwing a rope to release or make fast the boat, and cleaning the vessel. The employee had no substantial duties to perform while the vessel was in motion. Parenthetically, it may be mentioned that there were no sleeping quarters on the lighter.

In its opinion, the Supreme Court reviewed the history of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq. The court pointed out that historically it had been ruled that where longshoremen or stevedores worked on board a vessel they were considered as "seamen" for the purposes of compensation in case of illness or accident—whereas the same persons while working ashore were subject to local compensation laws and were not considered as engaged in the work of "seamen".

The court also pointed out, referring to the act's legislative history, that it was at one time amended so as to include a master and members of a crew of a vessel; that later the bill was amended so as to exempt "seamen"; that in final passage, however, the words "master or member of a crew" were substituted for "seamen".

Referring to this final change, the court said at page 257 of 309 U.S., at page 547 of 60 S.Ct., 84 L.Ed. 732: " * * * We think that this substitution has an important significance here. For we had held that longshoremen engaged on a vessel at a dock in navigable waters, in the work of loading or unloading, were 'seamen'. International Stevedoring Co. v. Haverty, 272 U.S. 50, 47 S.Ct. 19, 71 L.Ed. 157; Northern Coal & Dock Co. v. Strand, 278 U.S. 142, 49 S.Ct. 88, 73 L.Ed. 232. And, also, that such seamen if injured on a vessel in navigable waters, unlike one injured on land, could not have the benefit of a state workmen's compensation act. Southern Pacific Co. v. Jensen, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086, L.R.A.1918C, 451, Ann.Cas.1917E, 900. We think it is clear that Congress in finally adopting the phrase 'a master or member of a crew' in making its exception, intended to leave entitled to compensation all those various sorts of longshoremen and harbor workers who were performing labor on a vessel and to whom state compensation statutes were inapplicable. * * *"

In Nogueira v. New York, N. H. & H. R. Co., 281 U.S. 128, 50 S.Ct. 303, 74 L.Ed. 754, the Supreme Court also pointed out the changes made in the Longshoremen's and Harbor Workers' bill.

The phrase "master or member of a crew" was interpreted in the case of De Wald v. Baltimore & O. R. Co., 4 Cir., 1934, 71 F.2d 810, prior to the passage of the Social Security Act. In this case the Circuit Court of Appeals for the Fourth Circuit held that a bargeman whose functions were very similar to the barge captains here did not come within the meaning of the phrase "master or member of a crew". The bargeman's

duties in the De Wald case consisted of the checking and supervising of the loading and unloading of cargoes from the barge to steamships, and vice versa; seeing that the cargo was safely loaded and unloaded; opening and closing hatches on the barge, and putting in gangway boards; pumping water out of the barge, and making lines fast and unfast at docks or alongside vessels when the barge was moved about the harbor. The bargeman was not responsible for the navigation of the barge, and performed no duty in connection with such navigation, except the incidental one of making lines fast or unfast when tying up at docks or alongside vessels. The barges had no motive power equipment or steering apparatus, and were towed by tug boats.

Said the court, in ruling that the bargeman was not a "master" or "member of a crew" at page 813 of 71 F.2d: "Obviously De Wald was not a master. The A. H. Chamberlain, D.C., 206 F. 996. The judge below readily reached this conclusion. Nor in our opinion was he a member of a crew. He was the only man working on the barges in any capacity. 'Crew' is a collective noun and signifies 'the ship's company.' The Marie, D.C., 49 F. 286; Seneca Washed Gravel Corporation v. McManigal [2 Cir.], 65 F.2d 779; United States v. Winn, 28 Fed. Cas. [page] 733, No. 16,740."

In Diomede et al. v. Lowe, Deputy Commissioner, 2 Cir., 1937, 87 F.2d 296, the employee involved was in entire charge of a non self-propelled dump scow. He lived on board the scow, which was operated within New York Harbor, and occasionally outside the Harbor. His duties were similar to the duties of the barge captains in the instant case, consisting of the loading and dumping operations of the scow; watching for leaks; making minor repairs; pumping out water; fastening and unfastening lines from the scow to the dock and from the tug boat to the scow, and keeping running lights in order and visible.

The Circuit Court of Appeals for the Second Circuit held in the Diomede case that the employee could not be classified as a "master" because he had no men to command and no ship to navigate; and further, that he was not a "member of a crew" because he was not aiding in navigation.

Said the court at page 298 of 87 F.2d: "In The A. H. Chamberlain, D.C.E.D.N.Y., 206 F. 996, 998, in a well-considered opinion, the District Judge said, speaking of the status of one who was in charge of

a scow: 'The captain of a scow or barge, who does the work of a deckhand, and does not have the right to control the vessel's movements nor employment, and can act only as agent, in the sense that any sailor might act under specific direction of his captain, is not a master.'

"We agree and think it impossible to classify an employee in charge of a dump scow, a boat without means of self-propulsion, and unmanned except for its 'captain,' as the master of a vessel. De Wald v. Baltimore & O. R. Co., supra. A 'master' without men to command, without a ship to navigate, and subject to the orders of the tug captain when the scow is in tow, is a notion difficult to accept and untenable when it is sought thereby to exclude the decedent from the remedy provided by the Act.

"Nor was the decedent the member of a crew. * * * 'The word "crew" is used in the statute to connote a company of seamen belonging to the vessel, usually including the officers. It is the "ship's company." United States v. Winn, 28 Fed.Cas. page 733, No. 16,740. The crew is usually referred to and is naturally and primarily thought of as those who are on board and aiding in the navigation without reference to the nature of the arrangement under which they are on board. The Bound Brook, D.C., 146 F. 160, 164; The Buena Ventura, D.C., 243 F. 797, 799.'"

In Moore Dry Dock Co. v. Pillsbury et al., 1938, 100 F.2d 245, the Circuit Court of Appeals for the Ninth Circuit cited with approval the ruling in Diomede v. Lowe, supra, and De Wald v. Baltimore & O. R. Co., supra.

The question of the proper classification of barge captains came up for consideration under the Fair Labor Standards Act of 1938, 52 Stat. 1060, 29 U.S.C.A. § 201 et seq., in the case of Gale v. Union Bag and Paper Corporation, 5 Cir., 1940, 116 F.2d 27, certiorari denied 313 U.S. 559, 61 S. Ct. 837, 85 L.Ed. 1519. The court held that a barge tender or barge captain was a "seaman" within the meaning of the phrase excluding "seamen" from the compensation of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. The court considered the decisions under the Federal Longshoremen's and Harbor Workers' Act, 33 U.S.C.A. § 901 et seq., and ruled that such decisions did not apply to the problem of the proper interpretation of the excluded class of "seamen" under the Fair Labor Standards Act because the

word "seamen" was a broader term than "master or members of a crew".

I fail to see how the plaintiff's case is helped by the decision in Gale v. Union Bag and Paper Corp., supra, since all of the cases referred to clearly indicate that Congress intended the word "seamen" to have a broader connotation than "officers or members of a crew". Therefore, it seems obvious that it can readily be conceded for the purposes of the present case that the barge captains may come within the generally recognized classification of "seamen" and yet not come within the meaning of the phrase, "officer or member of the crew".

I have next to consider the recent case in this circuit of Loverich v. Warner Co., 3 Cir., 1941, 118 F.2d 690, 694, certiorari denied 313 U.S. 577, 61 S.Ct. 1104, 85 L. Ed. 1535. While this case is not relied on in the plaintiff's brief, defendant urges that it is distinguishable on its facts from the instant case. The Loverich case was an action for compensation for illness and injuries resulting from a fire on board an oil barge. The testimony disclosed that the employee involved was a licensed junior engineer and water tender, and qualified as an able seaman and barge master, second mate and third mate. He ate and slept on board the barge. During his employment he was paid by the month. He operated the entire barge, whose voyages sometimes took six weeks. During the trial, no question was raised with respect to the coverage of this employee under the Longshoremen's Act. The question arose for the first time on appeal for reasons which appear in the opinion of the United States Circuit Court of Appeals. That court ruled that the plaintiff came within the term "master or member of a crew". The ruling turned largely on the fact that the plaintiff was an experienced qualified seaman—that he ate and slept on board and that the voyages of the barge sometimes took as long as six weeks (cf., in the instant case, the longest voyage of the barges was six hours).

In distinguishing the South Chicago Dock case, supra, the Circuit Court of Appeals said: "He was not a mere watcher of a coal chute * * *. He was a licensed junior engineer and water tender and qualified as an able seaman and barge master, 2nd mate and 3rd mate. * * * He operated the entire barge, whose voyages sometimes took six weeks. He was, therefore, in our judgment, not a harbor worker, but a seaman."

As far as the research of counsel and court has been able to determine, there is no reported case in which the present problem has been considered. This is, therefore, a case of first impression as far as the Social Security Act is concerned.

The plaintiff strenuously contends that the judicial interpretation of language in other federal acts is of little or no value in interpreting the language under consideration in the Social Security Act. However, the court is here called upon to interpret a phrase which is practically identical with one appearing in another recent Act of Congress, and which language has been given judicial interpretation by the Supreme Court of the United States, as well as by several lower courts. It is a well known rule of statutory construction that Congress must be considered to have used words in a Statute in their known and ordinary significance and with their popular import: Old Colony R. R. Co. v. Commissioner, 284 U.S. 552, 52 S. Ct. 211, 76 L.Ed. 484; Deputy v. Du Pont, 308 U.S. 488, 493, 60 S.Ct. 363, 84 L.Ed. 416.

At the time of the passage of the Social Security Act in August of 1935, as previously indicated in this opinion, the phrase "master or member of a crew" in the Federal Longshoremen's Act had been judicially interpreted in the De Wald v. B. & O. R. Co. case, supra. Moreover, and of even greater significance, is the fact that the history of the legislation in connection with the Longshoremen's Act (as referred to by the Supreme Court in the South Chicago Dock case), was known and available at the time of the consideration by Congress of the Social Security Act. The adoption of practically identical language in the Social Security Act for the exclusion of "officer or member of the crew" does not by any means appear to be accidental; quite to the contrary. I am of the opinion that the adoption of practically identical language was made by Congress with the intention of excluding the same class of persons or employees from the Social Security Act as were excluded by the Federal Longshoremen's Act in the class "master or member of a crew".

In its reply brief the plaintiff strenuously contends that Article 10 of Regulations 91 (promulgated by the Acting

Commissioner of Internal Revenue with the approval of the Acting Secretary of the Treasury on November 9, 1936) is broad enough to embrace the barge captains in the description of the term "officers and members of crews". Plaintiff points out that Section 808 of the Social Security Act, 42 U.S.C.A. § 1008, expressly authorized the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, to make regulations. The case of Fawcus Machine Co. v. United States, 1931, 282 U.S. 375, 51 S.Ct. 144, 75 L.Ed. 397, is cited for the proposition that if the administrative regulations contemporaneously construing a statute and made for its enforcement under an express general authorization contained therein, are not unreasonable or inconsistent with the statute, they should not be overruled by the court except for weighty reasons. The difficulty with the plaintiff's position in this respect is that while I recognize Article 10 of the Regulations to be very broad on its face, I must take into consideration the history of the legislation as it pertains to the disputed clause of the act and, therefore, even if it be conceded arguendo that the Commission's regulation is broad enough to embrace bargemen within the exclusion of "officer or member of the crew", I must conclude that if such is a proper interpretation of the regulation, then the regulation would be inconsistent with the statute. With all due sympathy for the plaintiff's position, I might add that were it not for the legislative and judicial history of the language in dispute, the emphasis which the plaintiff ascribes to the regulations might be of more decisive effect.

The plaintiff's contention that Congress intended to eliminate administrative difficulties in excluding "officer or member of the crew" in the Social Security Act, and therefore all "seamen" must be considered to have been embraced within this class, is without merit. I cannot see that administrative difficulties would arise from a ruling that such bargemen are not exempt from the provisions of the Social Security Act. It should be just as simple a matter to collect the tax with respect to the compensation of these bargemen as it would be in connection with harbor and dock workers who work on land. Moreover, it is a well-recognized principle of statutory construction, particularly in matters of taxation, that one who seeks to come within an exempt class has the burden of proof that he comes within such exemption or exception.

I therefore have reached the conclusion that the barge captains in the present case are subject to the imposition of the Social Security Tax and do not fall within the exempt class of "officer or member of the crew".

### Conclusions of Law.

1. The taxes collected by the defendant from the plaintiff were lawfully assessed and collected.

 2. The barge captains employed by the plaintiff were not "officer or member of the crew" within the meaning of the exemption granted by Section 811(b) (5) of the Social Security Act.

3. Defendant is entitled to judgment in his favor, together with costs and disbursements of this action.

An order for judgment may be submitted in accordance with this opinion.