**WARNER CO. v. NORTON, Deputy Commissioner for Third Compensation District, et al.**

**Civ. A. No. 1556.**

District Court, E. D. Pennsylvania.

July 23, 1942.

Shields, Clark, Brown & McCown, of Philadelphia, Pa. (Samuel B. Fortenbaugh, Jr., of Philadelphia, Pa., of counsel), for plaintiff.

Gerald A. Gleeson, U. S. Atty., and J. Barton Rettew, Jr., Asst. U. S. Atty., both of Philadelphia, Pa., for Norton.

Maurice S. Levy, of Philadelphia, Pa., for Rusin.

KALODNER, District Judge.

The issue here is as to whether one Nicholas Rusin, a bargeman employed by the plaintiff, Warner Company, was "a master or member of a crew" within the meaning of the Federal Longshoremen's and Harbor Workers' Compensation Act, 44 Stat. 1424, 33 U.S.C.A. § 901 et seq.

The pertinent provisions of the Act are as follows:

"§ 903. (a) Compensation shall be payable under this chapter in respect of disability or death of an employee * * *. No compensation shall be payable in respect of the disability or death of—(1) A master or member of a crew of any vessel * * *."

"§ 905. The liability of an employer prescribed in section 904 of this chapter shall be exclusive and in place of all other liability of such employer to the employee * * *."

Section 902 — "Definitions" — provides: "(3) The term 'employee' does not include a master or member of a crew of any vessel * * *."

The Warner Company by bill of complaint has appealed from the award made by Augustus P. Norton, Deputy Commissioner for the Third Compensation District, to Rusin, as a result of injuries which Rusin suffered following a fall on board the Warner Company Barge No. 59, while he was engaged in turning the capstan on the barge to draw the vessel by its mooring line to its berth at a Philadelphia pier.

The Warner Company contends that Rusin came within the category of "a master or member of a crew" and was thus not entitled to any award under the provisions of the Longshoremen's Act.

The complaint, and the motion to dismiss the complaint, agree that the single question before the court is that of the jurisdiction under the Longshoremen's Act.

The facts as summarized in the original findings of the Commissioner are as follows:

"On March 11, 1938 said claimant while performing services for the employer upon the navigable waters of the United States, sustained personal injury resulting in his disability while he was employed as a boatman on Barge No. 59, then afloat on the waters of the Schuylkill River near Christian Street in said Philadelphia;

"That his duties consisted of general care of the barge or lighter to which he was at any time assigned, including making lines fast and unfast at docks and tightening or slackening them as necessary; that he had no other duty in connection with the operation of said vessels; that the vessel on which he was injured had no motive power of its own; that it was propelled either by towing or, for shorter distances, by winding up a cable by means of a capstan operated by hand; that the movements of the barge were confined to waters in the Schuylkill and Delaware Rivers within about 30 miles of the plant of the employer in Philadelphia; that he was the only person employed aboard the barge at the time of his injury;

"That on said date claimant was engaged in moving to a pier by means of a hand capstan the barge on which he was employed; that he succeeded in propelling it the greater part of the required distance against some difficulties of wind and tide, in addition to the weight of the boat; that the capstan bar then pulled out striking him in the chest."

The itinerary of Rusin's barge at various times covered ports of call in Pennsylvania, New Jersey and Delaware; the Delaware, Schuylkill, Christiana, Cooper and Rancocas Rivers; and included trips sixty miles in length, which sometimes took fifteen days between loading and discharging, although the barge was not actually under way except for a fraction of the time—i.e. for periods of fifteen or sixteen hours. The barge never went to sea. Rusin was continuously aboard. He lived, ate and slept on the barge, and bought his own meals. He was paid $80 a month. When he worked on any other boat he would get an additional 30¢ per hour.

Rusin worked under a union contract between the Harbor Boatmen's Union and the Warner Company wherein it was provided:

"Section 6: All Bargemen assigned to specific barges in active operation shall be paid a monthly salary of $80.00 and shall be provided with quarters. This compensation is for all work performed by Bargemen in the operation of his own vessel.

"Section 7: The rates as provided herein are based upon all services and time required to safeguard and operate the barge fleet, including necessary pumping, watching or other emergency duties on Sundays and holidays."

Rusin's duties were limited to his own barge and its safekeeping. Amplifying the Commissioner's findings as quoted above, it may be said that he had the duty of changing the mooring lines as necessary; repairing leaks; pumping; taking lines from the tugboats; responding to whistle signals; slackening lines; putting out navigational lights and signals, and taking general orders from the tugboats as necessary. The barge had no motive power and no wheel, and Rusin, as bargemaster, was entirely subject to the control of the tugboat·captain, and could not set his own course or control or change it at any time.

When the matter was heard before me on the motion to dismiss, and in accordance with my direction, Rusin testified as to his prior experience as a boatman or seaman. It was agreed by the parties that this testimony should be treated as supplementing the record made by the Commissioner.

Rusin testified that before he was employed by the Warner Company, his occupation was that of a painter; that he

had been a painter for about thirty-five years; that he had never served as a master or officer; that he had never had any seamen's or master's certificates or papers of any kind; that in 1908 he had worked as a seaman on a Merchant and Miners vessel plying between Philadelphia and Boston for about six months; that in 1930 he had worked on a dredge owned by the United States Engineering Department along shore for "a couple of months". He was employed by the Warner Company for about two years, from mid-1936 to mid-1938. When he left the Warner Company in 1938 he was employed intermittently as a painter by Girard College in Philadelphia for about two years. He was re-employed by the Warner Company about three months before the accident.

While the plaintiff in its brief (p. 6) described Rusin as "an experienced seaman, having spent most of his life in that occupation prior to being employed by the Warner Company", there was no testimony offered by the plaintiff in support of that contention.

The sum and substance of the testimony then is that Rusin was employed as a bargeman with duties substantially similar in nature to the bargemen in De Wald v. Baltimore & O. R. Co., 4 Cir., 71 F.2d 810; Diomede et al. v. Lowe, Deputy Commissioner, 2 Cir., 87 F.2d 296; The A. H. Chamberlain, D.C., 206 F. 996, 998; South Chicago Coal & Dock Co. et al. v. Bassett, Deputy Commissioner, 309 U.S. 251, 60 S.Ct. 544, 84 L.Ed. 732; Loverich v. Warner Co., 3 Cir., 118 F.2d 690, 694, certiorari denied 313 U.S. 577, 61 S.Ct. 1104, 85 L.Ed. 1535.

In all of the cases cited, with the exception of Loverich v. Warner Co., supra, it was held that the barge masters did not come within the category of "a master or member of a crew" and hence were subject to the exclusive jurisdiction of the Longshoremen's Act.

In the Loverich case, the United States Circuit Court of Appeals for this Circuit ruled that the bargeman employed upon one of the Warner Company barges of the same type as that involved in the instant proceeding came within the category of "a master or member of a crew" and was therefore exempt from the scope of the Longshoremen's Act, and allowed him to recover in admiralty.

In Berwind-White Coal Mining Co. v. Rothensies, D.C., 45 F.Supp. 55, 60, decided May 15, 1942, in which the question involved was whether "barge captains" were exempt from social security taxes as an "officer or member of the crew", I ruled that the barge captains, performing substantially the same duties as the bargeman in the instant case, were not exempt.

In my opinion, I discussed in detail the history of the Longshoremen's Act and the decisions thereunder. I there pointed out that the Loverich case turned largely on the fact that the bargeman was an experienced, qualified seaman, as stated in the opinion of the Circuit Court at page 694 of 118 F.2d: "He was not a mere watcher of a coal chute * * *. He was a licensed junior engineer and water tender and qualified as an able seaman and barge master, 2nd mate and 3rd mate. * * * He operated the entire barge, whose voyages sometimes took six weeks. He was, therefore, in our judgment, not a harbor worker, but a seaman."

Since the bargeman in the instant case was not an experienced, qualified, licensed or certificated seaman, I am of the opinion that the ruling in the Loverich case is not dispositive of the question here involved.

It is important to note that the Circuit Court of Appeals in the Loverich case specifically noted that the fact situation there was an "exception" such as was explained and applied by the Supreme Court of the United States in South Chicago Coal & Dock Co. et al. v. Bassett, Deputy Commissioner, supra.

In Berwind-White Coal Mining Co. v. Rothensies, supra, I pointed out that in its opinion the Supreme Court of the United States in the South Chicago Coal & Dock Co. case, in discussing the legislative history of the Longshoremen's Act, stressed the fact that it was at one time amended so as to include a master and members of a crew of a vessel; that later the bill was amended so as to exempt "seamen"; that in final passage, however, the words "master or member of a crew" were substituted for "seamen."

Referring to this final change, the court said at page 257 of 309 U.S., at page 547 of 60 S.Ct., 84 L.Ed. 732: "* * * We think that this substitution has an important significance here. For we had held that longshoremen engaged on a vessel at a dock in navigable waters, in the work of loading or unloading, were 'seamen'. International Stevedoring Co. v. Haverty, 272 U.S. 50, 47 S.Ct. 19, 71 L.Ed. 157; Northern Coal & Dock Co. v. Strand, 278 U.S. 142, 49 S.Ct.

88, 73 L.Ed. 232. And, also, that such seaman if injured on a vessel in navigable waters, unlike one injured on land, could not have the benefit of a state workmen's compensation act. Southern Pacific Co. v. Jensen, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086, L.R.A.1918C, 451, Ann.Cas.1917E, 900. We think it is clear that Congress in finally adopting the phrase 'a master or member of a crew' in making its exception, intended to leave entitled to compensation all those various sorts of longshoremen and harbor workers who were performing labor on a vessel and to whom state compensation statutes were inapplicable."

In Nogueira v. New York, N. H. & H. R. Co., 281 U.S. 128, 50 S.Ct. 303, 74 L.Ed. 754, the Supreme Court also pointed out the changes made in the Longshoremen's and Harbor Workers' bill.

The phrase "master or member of a crew" was interpreted in the case of De Wald v. Baltimore & O. R. Co., 4 Cir., 1934, 71 F. 2d 810, prior to the passage of the Social Security Act. 42 U.S.C.A. § 301 et seq. In this case the Circuit Court of Appeals for the Fourth Circuit held that a bargeman whose functions were very similar to the barge captains in Berwind-White Coal Mining Co., supra, did not come within the meaning of the phrase "master or member of a crew". The bargeman's duties in the De Wald case consisted of the checking and supervising of the loading and unloading of cargoes from the barge to steamships, and vice versa; seeing that the cargo was safely loaded and unloaded; opening and closing hatches on the barge, and putting in gangway boards; pumping water out of the barge, and making lines fast and unfast at docks or alongside vessels when the barge was moved about the harbor. The bargeman was not responsible for the navigation of the barge, and performed no duty in connection with such navigation, except the incidental one of making lines fast or unfast when tying up at docks or alongside vessels. The barges had no motive power equipment or steering apparatus, and were towed by tug boats.

Said the court, in ruling that the bargeman was not a "master" or "member of a crew", at page 813 of 71 F.2d: "Obviously De Wald was not a master. The A. H. Chamberlain, D.C., 206 F. 996. The judge below readily reached this conclusion. Nor in our opinion was he a member of a crew. He was the only man working on the barges in any capacity. 'Crew' is a collective noun and signifies 'the ship's company.' The Marie, D.C., 49 F. 286; Seneca Washed Gravel Corporation v. McManigal [2 Cir.], 65 F.2d 779; United States v. Winn, 28 Fed.Cas. page 733, No. 16,740."

In Diomede et al. v. Lowe, Deputy Commissioner, 2 Cir., 1937, 87 F.2d 296, the employee involved was in entire charge of a non self-propelled dump scow. He lived on board the scow, which was operated within New York Harbor, and occasionally outside the Harbor. His duties consisted of the loading and dumping operations of the scow; watching for leaks; making minor repairs; pumping out water; fastening and unfastening lines from the scow to the dock and from the tug boat to the scow, and keeping running lights in order and visible.

The Circuit Court of Appeals for the Second Circuit held in the Diomede case that the employee could not be classified as a "master" because he had no men to command and no ship to navigate; and further, that he was not a "member of a crew" because he was not aiding in navigation.

Said the court at page 298 of 87 F.2d:

"In The A. H. Chamberlain, D.C.E.D. N.Y., 206 F. 996, 998, in a well-considered opinion, the District Judge said, speaking of the status of one who was in charge of a scow: 'The captain of a scow or barge, who does the work of a deckhand, and does not have the right to control the vessel's movements nor employment, and can act only as agent, in the sense that any sailor might act under specific direction of his captain, is not a master.'

"We agree and think it impossible to classify an employee in charge of a dump scow, a boat without means of self-propulsion, and unmanned except for its 'captain,' as the master of a vessel. De Wald v. Baltimore & O. R. Co., supra. A 'master' without men to command, without a ship to navigate, and subject to the orders of the tug captain when the scow is in tow, is a notion difficult to accept and untenable when it is sought thereby to exclude the decedent from the remedy provided by the Act.

"Nor was the decedent the member of a crew. * * * 'The word "crew" is used in the statute to connote a company of seamen belonging to the vessel, usually in-

cluding the officers. It is the "ship's company". United States v. Winn, 28 Fed. Cas. p. 733, No. 16,740. The crew is usually referred to and is naturally and primarily thought of as those who are on board and aiding in the navigation without reference to the nature of the arrangement under which they are on board. The Bound Brook, D.C., 146 F. 160, 164; The Buena Ventura, D.C., 243 F. 797, 799.'"

In Moore Dry Dock Co. v. Pillsbury et al., 1938, 100 F.2d 245, the Circuit Court of Appeals for the Ninth Circuit cited with approval the ruling in Diomede v. Lowe, supra, and De Wald v. Baltimore & O. R. Co., supra.

In Blaske v. Bassett, D.C., 35 F.Supp. 315, 316, the court distinguished between the "sort of work performed by longshoremen and harbor workers, and * * * the duties of those employees on a vessel who are naturally and primarily on board to aid in the navigation of the boat", and ruled that a man performing substantially the same duties as the bargeman in the instant case came within the jurisdiction of the Longshoremen's Act and was not "a master or member of a crew".

For the reasons above stated, I am of the opinion that the bargeman Rusin in the instant proceeding did not come within the category of "a master or member of a crew", and accordingly the motion to dismiss the complaint is granted.