# BAILEY v. CITY OF NEW YORK.

District Court, S. D. New York.
May 19, 1944.

S. B. Axtell, of New York City, for libelant.

Ignatius M. Wilkinson, of New York City (Herbert B. Lee, of New York City, of counsel), for respondent.

CONGER, District Judge.

Libellant is seeking damages herein from the City of New York for

1. Indemnity for personal injuries;

2. Expenses of maintenance and cure.

Libellant has been in the service of the City of New York for about eighteen years; For the past fourteen years he has been an engineer on the ferry boats owned and operated by the City.

There are two causes of action set forth in the libel.

In the first, libellant claims that when he entered the City's service he was in good health and that on or about the 15th day of August, 1940, he discovered that he was suffering from tuberculosis to such an extent that he was totally incapacitated from performing his duties: He alleges that this illness and incapacity was caused by the City in failing to provide libellant with a safe and proper place to work: He further alleges and contends that the engine rooms of the ferry boats in which libellant was compelled to work were improperly constructed, improperly ventilated and that as a result due to inadequate supply of fresh air and due to libellant's being compelled to breathe foul air in which there was an inadequate supply of oxygen, libellant's health was impaired, his resistance to disease was lowered, he contracted an active condition of tuberculosis, which resulted in a permanent and chronic condition, which he alleges totally incapacitated him from working.

Libellant is 52 years of age. He gives a history of previous good health: He testified as to the ferry boats that he had worked on. He stated that the ventilation in the engine rooms of these boats was bad; that this was particularly so on the new boats which he worked on; that on these new boats the air in the engine room was smokey and stuffy and gassy; that there were no port holes to carry away the air or to afford a circulation of air; that smoke arose from hot rods in the engine room when oil was poured on them. It will not be necessary to go into detail as to the various boats that libellant worked on or the working conditions in each of them. The above generally applies to them all as libellant testified.

The complaint is generally smoke, fumes and gasses, impure air in the engine room with no ventilation or at least inadequate ventilation to correct the condition.

Libellant stated that for about a year prior to August, 1940 he began to feel ill; that he felt tired and cranky; that he would sneeze and had coughing spells; that he came home irritable and crabbed and had head and chest colds; that he kept at work, however, until August 6, 1940. On that day, libellant left the ship he was working on and has never returned to service.

On about August 10, 1940 libellant called a physician who diagnosed his condition as bronchitis at first and later, after a sputum test had been reported positive, as pulmonary tuberculosis in an active form.

On August 20, 1940 libellant was admitted to the U. S. Marine Hospital at Stapleton, Staten Island. There his illness was diagnosed as "tuberculosis pulmonary, bilateral, chronic, moderately advanced."

On August 23, 1940, libellant was transferred to the United States Marine Hospital at Ellis Island where he remained until September 23, 1940 at which time libellant left the hospital without the consent of the hospital authorities.

At this latter hospital libellant was under observation and was being treated. X-rays of his lungs were taken.

The doctors at the Ellis Island Hospital after observation and various tests found no evidence of an active tuberculosis.

In order to succeed in his first cause of action, libellant of course must prove

(a) That the City failed to provide him with a reasonably safe place to work;

(b). That thereby Libellant's illness was brought about.

I am satisfied libellant has failed in both respects.

The great weight of the testimony is that these engine rooms were properly constructed; that the ventilation facilities were proper and adequate and in accord with good engineering principles.

At the most one might conclude that these engine rooms were hot in summer and that at times when the wind was blowing in a certain direction smoke from the smoke stacks came down the ventilators and that at times some fumes from burning oil on hot rods were present.

I can't find any negligence on the part of the City; any condition which might be called a negligent condition. I cannot find from the evidence that the City failed in its duty to furnish libellant with a reasonably safe place to work.

Even assuming that these various engine rooms were faulty and negligently operated and maintained by the City, libellant has failed to prove that such a condition caused his present illness or lighted up an old condition to bring on his present illness.

There is no causal connection between the City's negligence and libellant's present condition.

The medical testimony does not sustain such a condition.

Libellant has failed to meet burden of proof on this branch of the case. There is no competent proof in the case that libellant's condition since August, 1940 is in any way connected with his work in the engine rooms of the ferry boats of the City

I find against libellant on the first cause of action.

In his second cause of action libellant seeks damages by way of maintenance and cure together with his hospital and medical bills for a reasonable period.

■ It is the duty of a vessel and her owner to provide maintenance and cure for a seaman injured on falling ill while in the service of the ship.

This duty arises from the contract of employment and does not rest upon negligence or culpability on the part of the master or owner, nor is it restricted to those cases where the seaman's employment is the cause of the injury or illness. Calmar S. S. Corp. v. Taylor, 303 U.S. 525, 58 S.Ct. 651, 82 L.Ed. 993.

■ Respondent insists that libellant was not a "seaman". It contends that libellant cannot be classed in that category because he was in the employ of the City as a Civil Service employee; that he worked eight hours a day, six days a week, boarded and lived at home and could not be discharged except in accordance with the rules of the Civil Service.

In the brief submitted by the Corporation Counsel for the City there is this statement: "We know of no cases where such a person has been awarded an allowance for maintenance and cure in the event of his becoming sick while employed on a City ferry boat." On the other hand, my attention has not been called to any case which a person so employed has been refused maintenance and cure.

It is true that libellant does not come within that class of sailors, the necessity of whose welfare and care gave rise to the ancient duty to supply to them maintenance and cure.

Certainly libellant comes well within the definition of a seaman given by Judge Hough in The Buena Ventura, D.C., 243 F. 797, 800: "a man who serves the ship as the result of a contractual engagement of any kind, and serves her in her navigation, is a member of the crew and entitled to the privileges of a seaman."

Under all the circumstances I feel that libellant was a seaman engaged in aiding the navigation of the City's ferry boats and entitled to the usual privileges of a seaman.

Whether libellant under the facts of this case is entitled to maintenance and cure is another question.

■ Libellant's attorney argues that libellant should receive in this suit an amount for maintenance and cure of $4,200 to cover a period from August 1940 to the date of the trial; this on the theory that during all this period libellant has had a chronic and more or less permanent illness. Libellant urges that since this case is tried in an Admiralty Court I should use a "sound and equitable discretion and make the requested award to Libellant."

I have no right to use my discretion and make an award unless the facts measured by the yardstick of the law warrants it. I do not regard Calmar S. S. Corp. v. Taylor, supra, as holding to the contrary.

■ The rule as laid down in The Bouker No. 2, 2 Cir., 241 F. 831, 835, has been generally accepted by the courts as the quantum of liability of a ship and its owner:

"The meaning of the phrase 'maintenance and cure' is plain. By the custom of the sea the hiring of sailors has for centuries included food and lodging at the ex-

pense of the ship. This is their maintenance, and the origin of the word indicates the kind and to a certain extent the quantum of assistance due the sailor from his ship. We agree with the remark in The Mars, supra [3 Cir., 149 F. 729], that:

" 'The word "cure" is used in its original meaning of care, and means proper care of the injured seaman, and not a positive, cure, which may be impossible.'

"Furthermore, 'cure' has been held to signify:

" 'The ordinary medical assistance and treatment in case of injury or acute disease, for a reasonable time. The ship is not bound to pay for (the sailor's) medication for the cure of a chronic disorder for an indefinite length of time.' The Ella S. Thayer, D.C., 40 F. [902], 904.

"Nor does the liability of the ship extend beyond—

" 'expense of effecting a cure by ordinary medical means. This does not include extraordinary medical treatment or treatment after cure effected as completely as possible in a particular case.' The C. S. Holmes, supra [D.C., 209 F. 970].

"It thus appears that the limits of cure or care, both as to kind of treatment and time of continuance, must always depend on the facts of each particular case."

I am rather of the opinion that Respondent's duty ended when libellant left the Marine Hospital at Ellis Island on September 23, 1940.

When libellant returned home from his work on August 6, 1940 he was ill. He went to bed; ran a temperature; after several days a doctor was called who diagnosed the case at first as bronchitis. He had a cough which was productive of sputum. A sputum test was had which when analyzed showed it to be positive for tubercular bacilli.

On August 23, 1940 libellant was taken to the U. S. Marine Hospital at Ellis Island.

At the hospital libellant was put to bed. He was under observation and treatment for a month. Various tests were made, none of which showed any abnormalities except in one respect, to which I shall refer later. He had·no temperature. He was found to be well developed and well nourished; his heart sounding was normal; his blood pressure was normal; he had no night sweats; suffered no loss of weight; had practically no expectorations.

The doctor in charge of him could find no evidence of active disease or of disability. The doctor further testified: "If he hadn't left the hospital A.W.O.L. the likelihood would be we would have discharged him of our own accord and told him he required no hospitalization."

As to the illness of libellant or the temporary upset which commenced on or about October 6, 1940 I can only conclude from the medical testimony that it had disappeared when he left the Marine Hospital. There was, however, an abnormality discovered at the Marine Hospital. X-ray pictures of libellant's chest showed increased density in the extreme apices of the lung; that indicated a healed region of the lungs, which is indicative of an inactive lesion. The conclusion of the doctors at the Marine Hospital was that libellant had a very old fibrotic lesion which was not active.

Libellant's attending physician diagnosed his condition at the present time as that of bilateral pulmonary tuberculosis in an inactive form.

That seems to be the consensus of opinion of all the physicians sworn as experts in the trial. There is an unanimity of opinion among the doctors.

Libellant produced as one of his witnesses a doctor who specializes in diseases of the chest, principally tuberculosis. He took X-rays of libellant's chest in December, 1943. It is significant that these X-rays showed no change in the condition as portrayed on the September 1940 X-rays taken at the Marine Hospital. The later X-rays also showed extensive lesions in the lungs which had been healed. This doctor stated that both X-rays showed a fibrotic calcified condition of the upper parts of the lungs; that it indicated an old tubercular condition, a good many years old; that these lesions were from 12 to 20 years old and that libellant had them before 1937.

This doctor further testified that a positive sputum would have no relation to disability unless there was some evidence of an activity in the lung beyond that and that he could not account for the man's alleged condition or alleged illness (as described by libellant) from the condition of the lungs at the present time.

The consensus of the medical testimony was that libellant now has and for many years past has had a pulmonary tuberculosis in an inactive form. That is, the

scars or healed lesions showing on the lung indicates that he had at one time in the past an active tuberculosis. The consensus of the medical testimony was that there was not an activation of this inactive condition in August, 1940.

I am not convinced that when libellant left the Marine Hospital at Ellis Island he was in such a condition that he required medical aid.

Maintenance and cure is not to be regarded as workmen's compensation.

Even assuming that from September 23, 1940 libellant was so ill that he still would be entitled to maintenance and cure, nevertheless he forfeited any such right when he voluntarily left the Marine Hospital at Ellis Island.

In Calmar S. S. Corp. v. Taylor, supra [303 U.S. 525, 58 S.Ct. 654, 82 L.Ed. 993], the Supreme Court in the following language set forth the purpose of Marine Hospitals in relation to sailors who are taken ill or injured while in the service of the ship: "* * * courts take cognizance of the marine hospital service where seamen may be treated at a minimum expense, in some cases without expense, and they limit recovery to the expense of such maintenance and cure as is not at the disposal of the seaman through recourse to that service."

The hospital record of the Marine Hospital at Ellis Island contains the following: "Disposition—Discharged A.W.O.L. (Left hospital without permission and did not return)—September 23, 1940."

Since that time libellant has remained home, except for two winters when he went south. Part of the way he drove the automobile; he went fishing at times; did light work about the house and some work in a Victory garden. He has had little medical attention, but has been treated by his wife, a registered nurse.

Libellant's reasons for leaving the hospital were not substantial. Having so left he must suffer the consequences.

A seaman who neglects to make use of hospital treatment available to him or who has declined hospital treatment calculated to improve his condition, cannot obtain an award for maintenance and cure, at his employer's expense. Marshall v. International Mercantile Marine Co., 2 Cir., 39 F.2d 551; Meyer v. United States (The Saguache), 2 Cir., 112 F.2d 482; Wassong v. N. Y. & Cuba S. S. Co.[1] The Bouker No. 2, 2 Cir., 241 F. 831; Stewart v. United States, D.C., 25 F.2d 869; The Santa Barbara, 2 Cir., 263 F. 369.

I find against the libellant on the second cause of action.

The complaint of the libellant is dismissed and respondent is entitled to a judgment of no cause of action against Libellant.

Settle decree on notice.

---

[1] No opinion for publication.