## PARISER v. CITY OF NEW YORK.

### No. 69.

Circuit Court of Appeals, Second Circuit.

Jan. 3, 1945.

432

Ignatius M. Wilkinson, Corp. Counsel, of New York City (Herbert B. Lee, of New York City, of counsel), for appellant.

Jacob Rassner, of New York City, for appellee.

Before SWAN, AUGUSTUS N. HAND and FRANK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

■ The plaintiff was a deckhand on the dredge Grabit belonging to the City of New York. On April 27, 1943, when the day's dredging was done and the vessel was moored alongside the 29th Street Pier, North River, orders were given to put hooks on the larger friction wheels to keep the outside dredging bucket suspended for the night. There were two of these wheels or drums—one on the starboard and one on the port side of the covered deck. The engineer Dowding placed a hook on the starboard drum. It was the duty of the plaintiff to place another hook on the spoke of the port drum. The hook weighed about thirty-five pounds, was at the end of a short chain bolted on the deck close to the drum, and was fastened to a three-quarter inch rope attached to a post running up from the deck. In placing the hook on the spoke the plaintiff had only to grasp the rope, lift the hook, put it on the spoke, move back away and the job would be done. Then the engineer on his signal would release the steam pressure which held up the bucket and the weight of the bucket suspended outside would slowly bring the spoke up snug against the hook. By this means the hook would lock the drum in position and would prevent the chain which held the bucket from being unwound, and the bucket would be held up out of the water for the night. The plaintiff testified that when he first attempted to place the hook on the spoke of the port drum it "flew off" but he backed out of the way. He then replaced it on the spoke and gave the signal to the engineer to release the steam pressure but, as soon as the steam pressure which held the bucket up was released, there was a quick jerk. He jumped to get out of the way of the wheel and hook, and, as he did this, slipped on the grease which was on the deck where he was standing next the post. The apparent effect of slipping, according to his version, was to throw his left foot into the air so that the driving rod caught it, dragging him over, and thereby caused a fracture of the fourth metatarsal bone of his left foot. He testified that the strain occasioned by the slipping on the greasy deck also produced an inguinal hernia which was something he had never had before. The defendant offered evidence indicating that the plaintiff, after giving the signal, got up on the engine bed and attempted to place the hook on the spoke at a time when the engine was revolving, thus seeking to negative plaintiff's testimony that his injuries arose from slipping on the greasy deck. Which version of the accident was correct was a question for the jury.

According to the plaintiff's story, the second time he placed the hook on the spoke it again slipped off, either because of the

jerk occasioned by the too sudden releasing of the steam pressure or because of the grease that had accumulated on the spoke. Whatever caused the hook to slip off, as it fell he says he stepped away, his right foot slipped in the grease on the deck, his back went back and hit the post, and he then slipped still more, went off balance, his left foot went in the air, and as it came down the engine caught it and dragged it in. We cannot say that this could not reasonably have happened.

The plaintiff was instructed by the master of the dredge not to stand or jump on the engine bed and not to put the hook on when the wheel was revolving (fol. 249). He, however, testified that the wheel was not revolving but only rocking when he put the hook on. He evidently understood that this action on his part did not violate the order. His testimony was positive that he did not get up on the engine bed to install the hook. Moreover, the jury might have found that the hook fell off because of the jerk when the pressure was released too suddenly and not because of any prior rocking of the wheel and that plaintiff's accident was only due to the grease on the deck or the absence of a guard rail or both.

■■ Judge Bondy, who presided at the trial, allowed the jury to determine whether it was negligent for the defendant to allow grease to accumulate on the deck, whereby the plaintiff slipped and thus got his foot caught, and whether this occurred because of its failure to provide a guardrail. The defendant offered evidence showing that there was no grease at the place where the plaintiff claimed to have slipped and also showing that it was plaintiff's duty to clean up the ship. It also offered evidence that, according to prevalent practice, guardrails were not customarily placed on dredges in order to protect employees from injury arising from contact with the machinery. But, we think the need of a guardrail in such a place as the one in which the plaintiff worked was a question for the jury. He was required to work close to a wheel on which a hook had to be installed and the chance of his getting hurt by the moving machinery, when the steam pressure was released, whether by some carelessness of his own or otherwise, was not so negligible that a jury might not find that safeguards should have been provided. As for the accumulation of grease, the plaintiff himself testified that his duties

were to "put burners in and take them out and to clean the ship and put oil on the pumps and cylinders", and he said that the grease was thick and sticky and had not been cleaned off for six weeks. It thus appeared that the officers of the ship had let conditions remain as they were for a long time and had treated the plaintiff's duty to clean up the ship as not applying to the grease which accumulated on the deck near the drum. He was ordered to put the hook on the spoke for the night at a time when there was no opportunity to remove the grease if the order was to be obeyed. The plaintiff's failure to remove the grease under these circumstances was at most no more than contributory negligence which under the quite correct charge of the court would only lessen the amount of his damages. Moreover, the defendant made no objection to the charge which left this question to the jury.

■ The defendant further argues that the court lacked jurisdiction of the case because the plaintiff was not a seaman. This contention is wholly without merit. It is well settled that such an employee working on a dredge is a seaman entitled to sue under the Jones Act, 46 U.S.C.A. § 688. Norton v. Warner, 321 U.S. 565, 64 S.Ct. 747; Ellis v. United States, 206 U.S. 246, 259, 27 S.Ct. 600, 51 L.Ed. 1047, 11 Ann.Cas. 589.

■■ The defendant next suggests that the judge asked too many questions of the witnesses and unfairly interfered with the proper conduct of the trial. We have examined the record in view of this complaint with considerable care and see no basis for any grievance. A judge who conducts a jury trial has a duty to see that the facts are clearly presented and may ask pertinent questions of the witnesses to that end. He is not a mere passive spectator or moderator, though it goes without saying that he should exercise self-restraint and preserve an atmosphere of impartiality and detachment. Judge Bondy scrupulously observed all these requirements.

■ Finally, the defendant contends that we ought to review the perhaps too generous award made to the plaintiff by the jury on the ground that it was excessive. But the instructions of the trial court as to the rules to be applied by the jury in fixing damages were entirely correct and were not objected to. If the amount of the

434

verdict be regarded as in fact excessive, nevertheless it was the jury's estimate arrived at after a proper charge. Such a matter is not reviewable on appeal but is solely one of fact for the jury to determine. Southern Ry-Carolina Division v. Bennett, 233 U.S. 80, 87, 34 S.Ct. 566, 58 L.Ed. 860; Herencia v. Guzman, 219 U.S. 44, 45, 31 S.Ct. 135, 55 L.Ed. 81; Swift & Co. v. Ellinor, 5 Cir., 101 F. 2, 131, 132; Metropolitan St. Ry. Co. v. Jacobi, 2 Cir., 112 Fed. 924, 925.

Judgment affirmed.