Karl WEISS, Jr., Plaintiff-
Appellee,

v.

CENTRAL RAILROAD COMPANY OF
NEW JERSEY, Defendant-
Appellant.

No. 331, Docket 23966.

United States Court of Appeals
Second Circuit.

Argued April 10, 1956.

Decided June 26, 1956.

Lumbard, Circuit Judge, dissented.

Jack Steinman, New York City (Harry Eisenberg and Klonsky & Steinman, New York City, on the brief), for plaintiff-appellee.

Vincent E. McGowan, New York City, for defendant-appellant.

Before CLARK, Chief Judge, and HINCKS and LUMBARD, Circuit Judges.

CLARK, Chief Judge.

Plaintiff brought this action for negligence under the Jones Act, 46 U.S.C. § 688, and maintenance and cure under the general maritime law. The court submitted the count upon the Jones Act to a jury, which returned a verdict for defendant. At plaintiff's request the judge then considered the count for maintenance and cure and granted judgment for plaintiff for $5,000 and costs.[1] Defendant has appealed on the ground that plaintiff was not a seaman.

Defendant operates ferryboats crossing the Hudson River between Jersey City, New Jersey, and Liberty Street, New York City. Plaintiff applied to defendant for employment in June, 1950, and was hired as a "ferry deckhand," who was to report for work on an "extra man" basis, i. e., when called to replace other employees who were absent from their regular duties. Plaintiff began work on June 14 and continued in defend-ant's employ until July 3, 1950. During this period he worked 7 days on ferryboats as a deckhand or wheelsman; and on 6 other days he was employed on shore as a doorman or bridgeman, jobs connected with the docking and departure of ferries. On June 21 he worked as a deckhand on the ferryboat Somerville; on June 25, as a deckhand on the ferryboat Wilkes-Barre; on June 29 and 30 and July 1, as a wheelsman on the Wilkes-Barre; on July 2, as a deckhand on the Somerville; and on July 3, as a deckhand on the ferryboat Westfield.

When he worked as a deckhand plaintiff's duties consisted principally in handling mooring lines and keeping the vessel clean. As a wheelsman he acted as lookout in the wheelhouse, kept the wheelhouse clean, chocked the wheels of the first few cars that were loaded on the ferry, adjusted the rudder pin, and for part of the time operated the wheel of the ferry after it cleared the slip. During the period of his employment plaintiff slept at home and ate his meals there (except for his lunch); he was paid an hourly wage and worked an 8-hour day with occasional overtime.

While employed as a seaman aboard the ferryboats Wilkes-Barre, Somerville, and Westfield, plaintiff became ill by reason of a reactivation of a latent condition of pulmonary tuberculosis. There was evidence that this condition was produced by the physical exertion involved in working aboard ferryboats, particularly the running up and down stairs incident to his duties as a wheelsman. Although during a prior period of military service and on several other previous occasions plaintiff had suffered from respiratory ailments, he had no reason to believe at the time of accepting employment with defendant that he was

[1.] Hence there is not involved the practice followed in this circuit of submitting the issue of maintenance and cure to the jury, along with the issue of negligence. See Gonzales v. United Fruit Co., 2 Cir., 193 F.2d 479, 480 note 1. Obviously the simultaneous trial of the two claims—one to the judge sitting in admiralty and the other to the jury—is convenient and proper. See Jordine v. Walling, 3 Cir., 185 F.2d 662, 671; Mullen v. Fitz Simons & Connell Dredge & Dock Co., 7 Cir., 191 F.2d 82, 85–86, certiorari denied 342 U.S. 888, 72 S.Ct. 173, 96 L.Ed. 666; Fraser v. Astra Steamship Corp., D.C. S.D.N.Y., 18 F.R.D. 240, 245; Troupe v. Chicago, Duluth & Georgian Bay Transit Co., 2 Cir., 234 F.2d 253.

not fit for duty and that his respiratory complaints had not been cured. For a period of time after July 3, 1950, until July 12, 1950, when he was admitted to the United States Public Health Service Hospital at Staten Island, New York, plaintiff was confined to his home; and commencing July 8 he was treated by his family physician for pneumonia.

On July 8 defendant called plaintiff to go to work, but he reported that he was then confined to bed by illness. Thereafter he was hospitalized from July 12, 1950, until October 29, 1951. He continued to receive outpatient care, visiting the hospital "about every week" to get a pneumo refill, until February 23, 1955, when he was readmitted to the hospital for a resection of the diseased lung. He remained there as a convalescent tubercular patient until his discharge on June 30, 1955.

Judge Murphy found that plaintiff was a seaman entitled to maintenance and cure for the period of 40 months during which he received outpatient care and the 8 days from July 3, 1950, to July 11, 1950, before his initial admission to the hospital, and awarded him the sum of $5,000. Upon defendant's appeal herein, it contends both that plaintiff is not entitled to maintenance and cure as a seaman and that the award is excessive.

Judge Murphy's determination of the basic facts from which emerges the ultimate finding that plaintiff is a seaman entitled to the traditional right to maintenance and cure is not clearly erroneous. On the basis of his determination of facts, which we accept—see McAllister v. United States, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20—we think his conclusion cannot be reversed as a matter of law. For in addition to finding support in the many authorities discussed below, it reflects the ancient solicitude of courts of admiralty for those who labor at sea. See The Osceola, 189 U.S. 158, 175, 23 S.Ct. 483, 47 L.Ed. 760.

■ Generally the criteria for determining whether or not plaintiff is a "seaman" for purposes of maintenance and cure are the same as those governing his right to recover under the Jones Act, 46 U.S.C. § 688. See Swanson v. Marra Bros., 328 U.S. 1, 4, 66 S.Ct. 869, 90 L.Ed. 1045. If an employee is a "seaman" for those purposes, he is by the same token a "master or member of a crew of any vessel" within the meaning of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901, 903(a)(1), and is excluded from the coverage of that Act. For it was the purpose of the Longshoremen's Act to provide recovery for longshoremen and harbor workers previously unable to obtain it under state compensation laws, but at the same time to leave distinct and unimpaired the traditional rights and remedies of seamen, for whom maintenance and cure had long served as a kind of nonstatutory workmen's compensation. See South Chicago Coal & Dock Co. v. Bassett, 309 U.S. 251, 60 S.Ct. 544, 84 L.Ed. 732; Swanson v. Marra Bros., supra, 328 U.S. 1, 4, 66 S.Ct. 869, 90 L.Ed. 1045; Robinson on Admiralty § 36 (1939); cf. Seas Shipping Co. v. Sieracki, 328 U.S. 85, 101, 102, 104–107, 66 S.Ct. 872, 90 L.Ed. 1099. The remedies of an employee encompassed by the Longshoremen's Act and of a "master or member of a crew of any vessel" (a "seaman" for purposes of maintenance and cure) are therefore mutually exclusive, Norton v. Warner Co., 321 U.S. 565, 570, 64 S.Ct. 747, 88 L.Ed. 430; and the problem now presented is to determine into which of these two categories the plaintiff here must fall.

■ Weighing against plaintiff's claim are the factors that he was employed aboard ship for only a short period of time; that during that period he slept and ate most of his meals ashore; that he was paid an hourly wage and worked for the most part an 8-hour day; that he was employed for part of the time on jobs ashore; that he was working on an "extra man," rather than on a regular, basis; and that he had no seaman's papers. Various of these factors have been singled out for expression in decisions which have held claimants not to occupy a seaman's status. See South Chicago

Coal & Dock Co. v. Bassett, supra, 309 U.S. 251, 60 S.Ct. 544, 84 L.Ed. 732; Merritt-Chapman & Scott Corp. v. Willard, 2 Cir., 189 F.2d 791; Wm. Spencer & Son Corp. v. Lowe, 2 Cir., 152 F.2d 847, certiorari denied 328 U.S. 837, 66 S.Ct. 1012, 90 L.Ed. 1613; Moore Dry Dock Co. v. Pillsbury, 9 Cir., 100 F.2d 245. But while these factors deserve consideration they are by no means conclusive, or even perhaps realistically compelling, as other cases have made clear. See Norton v. Warner Co., supra, 321 U.S. 565, 64 S.Ct. 747; A. L. Mechling Barge Line v. Bassett, 7 Cir., 119 F.2d 995; Maryland Casualty Co. v. Lawson, 5 Cir., 94 F.2d 190; Carumbo v. Cape Cod S. S. Co., 1 Cir., 123 F.2d 991.

So here, where the vessels in question were, during the time of plaintiff's employment aboard them, engaged in continuous navigation involving the carriage of passengers and vehicles across the Hudson River and where plaintiff himself was at the wheel of one ferryboat, the Wilkes-Barre, for considerable periods of time, we think the factors named inadequate to require a finding of only land employment as a matter of law. We may note the testimony of the Wilkes-Barre's captain that, while serving as a wheelsman, plaintiff did "practically the same as a steady man would do" and that "the boy seemed to be so anxious to learn the business." The captain instructed him in the proper operation of the wheel in navigating across the river. Thus plaintiff, although employed on an "extra man" basis, was merely standing on the first rung of the ladder which would lead him to a regular position in the ferryboat service. Despite the irregularity of his work, he was performing the duties of a seaman and was entitled to the rights pertaining to that status. Though but a neophyte, he was a member of a crew actively engaged in navigation.

■ We recognize that to be considered a "seaman" for purposes of recovery under the Jones Act and for exclusion from the Longshoremen's Act the nature of a claimant's duties aboard a vessel is not controlling and that he need not be serving her in a strictly navigational capacity. See A. L. Mechling Barge Line v. Bassett, supra, 7 Cir., 119 F.2d 995, 998. Still we know of no case where an employee whose duties consisted of actually operating the wheel of a vessel has been denied the designation of "seaman," as traditionally and universally associated with his position. Thus in the leading case of South Chicago Coal & Dock Co. v. Bassett, supra, 309 U.S. 251, 260, 60 S.Ct. 544, 549, Mr. Chief Justice Hughes said: "This [Longshoremen's] Act, as we have seen, was to provide compensation for a class of employees at work on a vessel in navigable waters who, although they might be classed as seamen (International Stevedoring Co. v. Haverty, supra [272 U.S. 50, 47 S.Ct. 19, 71 L.Ed. 157]), were still regarded as distinct from members of a 'crew.' They were persons serving on vessels, to be sure, but their service was that of laborers, of the sort performed by longshoremen and harbor workers and thus distinguished from those employees on the vessel who are naturally and primarily on board to aid in her navigation. See De Wald v. Baltimore & Ohio R. Co., 4 Cir., 71 F.2d 810; Diomede v. Lowe, 2 Cir., 87 F.2d 296; Moore Dry Dock Co. v. Pillsbury, 9 Cir., 100 F.2d 245."

The Moore Dry Dock Co. case, cited supra and relied upon by defendant in this case, is clearly distinguishable on the grounds set forth in the South Chicago Coal case; for in the Moore Dry Dock case the plaintiff Howland was employed as a "rigger" and spent the greater part of his working time aboard a launch or tug which performed various tasks connected with the operation of defendant's shipyard. He was not one of "those employees on the vessel who are naturally and primarily on board to aid in her navigation." South Chicago Coal & Dock Co. v. Bassett, supra, 309 U.S. 251, 260, 60 S.Ct. 544, 549. In this case, on the other hand, plaintiff, as part of his assigned duties as a crewman, took the wheel of a vessel regularly engaged in the carriage of passengers and vehicles

across navigable waters. Thus as "a man who serve[d] the ship as the result of a contractual engagement * * *, and serve[d] her in her navigation, [he was] a member of the crew and entitled to the privileges of a seaman." The Buena Ventura, D.C.S.D.N.Y., 243 F. 797, 800.

Land-based employees aboard dredges whose traditional status as seamen is less clear than that of Weiss here have been permitted to recover under the Jones Act. See Pariser v. City of New York, 2 Cir., 146 F.2d 431; McKie v. Diamond Marine Co., 5 Cir., 204 F.2d 132; Gianfala v. Texas Co., 350 U.S. 879, reversing Texas Co. v. Gianfala, 5 Cir., 222 F.2d 382; Early v. American Dredging Co., D.C.E.D.Pa., 101 F.Supp. 393. And see also Buffalo & Grand Island Ferry Co. v. Williams, 2 Cir., 25 F.2d 612; The Mars, 3 Cir., 149 F. 729.

■ But even if it be conceded that plaintiff is a "seaman" for some purposes, it may still be argued that the right to maintenance and cure should be denied him because he did not lead the life traditionally peculiar to seamen, involving surrender of personal rights and liberties for a lengthy overseas voyage, exposure to peril, changes of climate, exhausting labor, and the danger (were it not for maintenance and cure) of being forced to rely upon his own meager resources while sick and starving in a foreign port. We know of no authority, however, for holding that a seaman is not entitled to the traditional privileges of his status merely because his voyages are short, because he sleeps ashore, or for other reasons his lot is more pleasant than that of most of his brethren. Further, so to hold would be to create a genre of "seamen" ineligible for the benefits of maintenance and cure, yet equally barred from recovery under the Longshoremen's Act, 33 U.S.C. § 903(a) (1). This surely was not the intention of Congress.

In Bailey v. City of New York, D.C. S.D.N.Y., 55 F.Supp. 699, a ferryboat engineer, who worked a regular 8-hour day and slept at home, was held to be a "seaman" entitled to recover maintenance and cure. Without specifically discussing his status as a seaman we affirmed, 2 Cir., 153 F.2d 427. And in Pariser v. City of New York, supra, 2 Cir., 146 F.2d 431, we sustained the right of a similar land-based dredge employee to sue under the Jones Act. It may well be that plaintiff in this case entered into his ship's service in reliance upon his right to maintenance and cure established by our cases. In any event we see no reason to make an exception here to the general maritime rule heretofore uniformly enforced.

■ On the further question of the excessiveness of the award, we conclude that Judge Murphy's determination was not clearly erroneous and therefore must stand. See Farrell v. United States, 336 U.S. 511, 69 S.Ct. 707, 93 L.Ed. 850.

Affirmed.

LUMBARD, Circuit Judge (dissenting).

I agree with my colleagues that Judge Murphy's findings on the basic facts are not clearly erroneous and must be accepted on this appeal. I also agree that the remedies of an employee encompassed by the Longshoremen's Act and of a "seaman" for purposes of maintenance and cure are mutually exclusive and that between them the two sets of remedies cover all employees injured on navigable waters beyond the coverage of state compensation acts. Thus every person who is a "master or member of a crew" within the meaning of the Longshoremen's Act and therefore excluded from its remedies is also a "seaman" entitled to maintenance and cure. In using the phrase "master or member of a crew" I think Congress intended to exclude only those persons who were entitled to the seaman's traditional remedy. See Norton v. Warner Co., 1944, 321 U.S. 565, 570, 64 S.Ct. 747, 88 L.Ed. 430. So far I agree with my brothers. I am unable to agree with them, however, when they conclude that the plaintiff in this case is a "seaman" entitled to maintenance and cure.

It must first be pointed out that the phrase "member of a crew" as used in the Longshoremen's Act and the word "seaman" as used in determining the right to maintenance and cure do not necessarily have the same meaning as "seaman" used in other contexts or for other purposes. Thus "seaman" has a different meaning in determining the right to sue for unseaworthiness. That remedy is available to longshoremen who would clearly have no claim to maintenance and cure and who are equally clearly within the coverage of the Longshoremen's Act. Seas Shipping Co. v. Sieracki, 1946, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099. "Seaman" also had a different meaning as it was used in the Jones Act. South Chicago Coal & Dock Co. v. Bassett, 1940, 309 U.S. 251, 257, 60 S.Ct. 544, 84 L.Ed. 732. Thus the Jones Act was extended to longshoremen who were clearly neither "crew members" nor eligible for maintenance and cure. International Stevedoring Co. v. Haverty, 1926, 272 U.S. 50, 47 S.Ct. 19, 71 L.Ed. 157. But when the Longshoremen's Act became effective in 1927 it cut down the availability of the Jones Act remedy by making the Longshoremen's Act remedies exclusive in the area to which they applied. 33 U.S.C.A. § 905; Swanson v. Marra Bros., 1946, 328 U.S. 1, 4, 66 S.Ct. 869, 90 L.Ed. 1045. Thus only a "master or member of a crew" may now sue under the Jones Act, unless for some reason the Longshoremen's Act is not operative, for example if the employer fails to secure payment of compensation as required by the Act. 33 U.S.C.A. § 905. Jones Act cases which arose after the effective date of the Longshoremen's Act are therefore relevant to our problem insofar as they deal with the question of the exclusiveness of the Longshoremen's Act remedy. The fundamental question, however, is the nature and scope of the traditional remedy of maintenance and cure. Cases arising under the Longshoremen's Act are relevant because they use or should use the same criteria in defining the scope of that Act.

In determining what category of persons is entitled to maintenance and cure it is appropriate to consider the origin and purpose of this unique doctrine which allows an employee to recover from his employer not only for injuries and diseases caused by his employment but also for illness unrelated to his employment resulting from disease which antedated his employment, Calmar S. S. Corp. v. Taylor, 1938, 303 U.S. 525, 58 S.Ct. 651, 82 L.Ed. 993; Loverich v. Warner Co., 3 Cir., 1941, 118 F.2d 690, certiorari denied, 313 U.S. 577, 61 S.Ct. 1104, 85 L.Ed. 1535. Spahn v. United States, 4 Cir., 1949, 171 F.2d 980, and for injuries received while off duty on shore. Aguilar v. Standard Oil Co., 1943, 318 U.S. 724, 63 S.Ct. 930, 87 L.Ed. 1107; Smith v. United States, 4 Cir., 1948, 167 F.2d 550. This remedy was considered to be justified by the peculiar characteristics of the life of a seafaring man. Thus in Harden v. Gordon, C.C.D.Me.1823, 11 Fed.Cas. pp. 480, 483, No. 6,047, Story, J. advanced as reasons for imposing this liability the peculiar perils of a life at sea, the helplessness of a seaman stricken by illness, and the need for compelling the owners and masters of ships to safeguard the health of the seamen entrusted to their care. More recently the Supreme Court has reiterated these considerations emphasizing particularly the unique hazards involved, the restrictions on a seaman's liberty and his subservience to authority, and the deprivation of the ordinary comforts of life. Aguilar v. Standard Oil Co., supra 318 U.S. at pages 727–729, 63 S.Ct. at pages 932–933. See also The City of Avalon, 9 Cir., 1946, 156 F.2d 500. The most important single factor which has justified the creation of this remedy for seamen and for no one else is, I think, the peculiar relation of a seaman to his ship. The typical seaman looks to his ship, not only as the place where he works, but as a home. It is his "framework of existence." Aguilar v. Standard Oil Co., supra, 318 U.S. at page 732, 63 S.Ct. at page 934. Thus when sickness makes it impossible for him to work on the ship, he is deprived of a place

to live as well as a place to work. Under these circumstances it was appropriate to require the shipowner to provide him with a means of maintaining himself during his illness. It is significant that maintenance and cure was originally limited to the period of the voyage or of the seaman's contract. Cornell Steamboat Co. v. Fallon, 2 Cir.1909, 179 F. 293, certiorari denied 1910, 216 U.S. 623, 30 S. Ct. 577, 54 L.Ed. 642. Enochasson v. Freeport Sulphur Co., D.C.S.D.Tex.1925, 7 F.2d 674. It was only during this period that the seaman could have anticipated that the ship would maintain him. The seaman's complete dependence upon the ship also justified imposing a heavy responsibility upon the shipowner to care for those who were so completely within his custody and power.

None of these considerations are applicable in a case like the one now before us. The plaintiff is like any other eight-hour-a-day worker and faces no unusual hardships, privations, or discomforts. The ferries on which he worked were places of employment and nothing else. My colleagues, however, have concluded that because the captain of one ferryboat allowed the plaintiff to turn the wheel when the vessel was safely in the center of the Hudson River, the plaintiff is a seafaring man, is entitled to "the ancient solicitude of courts of admiralty," and should be awarded maintenance and cure.

The nature of the duties of a worker on board ship is of course relevant in determining whether he is a "seaman," but it is not the only, and not even the most important consideration. In McKie v. Diamond Marine Co., 5 Cir., 1953, 204 F.2d 132, 136, relied on by the majority, the Court pointed out that the essential elements of the definition of a " 'member of a crew' " are "that the ship be in navigation; that there be a more or less permanent connection with the ship; and that the worker be aboard primarily to aid in navigation." Here of course there is no question that the ship was in navigation. Of the other two factors I think the permanent connection with the ship

is the more important. See A. L. Mechling Barge Line v. Bassett, 7 Cir., 1941, 119 F.2d 995, 998; Maryland Casualty Co. v. Lawson, 5 Cir., 1938, 94 F.2d 190. It is this criterion which most clearly embodies the considerations which gave rise to the doctrine of maintenance and cure. Moreover, workers whose duties have nothing to do with navigation have often been held to be "seamen" if they have the requisite connection with a ship. E. g. Carroll v. United States, 2 Cir., 1943, 133 F.2d 690 (steward); The Buena Ventura, D.C.S.D.N.Y.1916, 243 F. 797 (wireless operator); The J. S. Warden, D.C.S.D.N.Y.1910, 175 F. 314 (bartender). It has also been recognized that even though a worker performs the duties of a seaman, he may not be a "seaman" or "member of a crew" if he lacks the requisite connection with the vessel. Norton v. Warner Co., supra, 321 U.S. at page 573, 64 S.Ct. at page 751; Moore Dry Dock Co. v. Pillsbury, 9 Cir., 1938, 100 F.2d 245. A fortiori the worker is not a "seaman" if the performance of duties as a seaman is only incidental to other primary duties. Merritt-Chapman & Scott Corp. v. Willard, 2 Cir., 1951, 189 F.2d 791; Wm. Spencer & Son Corp. v. Lowe, 2 Cir., 1945, 152 F.2d 847.

In determining whether a worker has such a permanent connection with a ship as makes him a "seaman" the courts have laid great emphasis on whether the employee eats and sleeps ashore or aboard ship, whether he works an eight-hour day, and whether he is paid an hourly wage or a monthly salary. Norton v. Warner Co., supra, 321 U.S. at page 567, 64 S.Ct. at pages 748, 749; South Chicago Coal & Dock Co. v. Bassett, 1940, 309 U.S. 251, 255, 260, 60 S.Ct. 544, 84 L.Ed. 732; The Lavinia D., 2 Cir., 1951, 190 F.2d 684; Merritt-Chapman & Scott Corp. v. Willard, supra; Wm. Spencer & Son Corp. v. Lowe, supra; A. L. Mechling Barge Line v. Bassett, supra; Moore Dry Dock Co. v. Pillsbury, supra. These factors are particularly relevant in the light of the basis and justification for the doctrine of maintenance and cure. Additional significant factors are whether the

worker has seaman's papers and experience as a seaman, Merritt-Chapman & Scott Corp. v. Willard, supra; Wm. Spencer & Son Corp. v. Lowe, supra, and whether he has permanent employment on board ship or is merely available on call to do such work as is available. South Chicago Coal & Dock Co. v. Bassett, supra, 309 U.S. at page 260, 60 S.Ct. at page 549; Moore Dry Dock Co. v. Pillsbury, supra.

All of these considerations militate against recovery by the plaintiff here. Weiss lived and ate his meals on shore; he had no seaman's papers; he worked an eight-hour day with occasional overtime; he was paid an hourly wage; he worked only on call to replace absentees at whatever job they might have. In point of fact Weiss worked about the same amount of time on the dock as on ships. Although on three days one captain did allow Weiss to turn the ship's wheel under his supervision, most of Weiss' duties were not related to navigation—thus he kept the ship clean and chocked the wheels of cars as they were loaded aboard for the perilous journey across the Hudson.

If Weiss was a crew-member, what ship's crew did he belong to? The most he worked on any one vessel was four days; he spent more time than that on shore. The fact is that he was shuttled from one job to another as he was needed. He had no permanent connection with any single ship. Nor did he depend on the fleet of ships to any greater degree than the ordinary longshoreman or harbor worker who works only on the docks.

I think this case is governed by Moore Dry Dock Co. v. Pillsbury, supra, which was cited with approval by the Supreme Court in South Chicago Coal & Dock Co. v. Bassett, supra 309 U.S. at page 260, 60 S.Ct. at page 549, and in Norton v. Warner Co., supra, 321 U.S. at page 572, 64 S.Ct. at page 751 note 6. The majority seeks to distinguish this case on the ground that Howland, the worker in the Moore Dry Dock case was not one of those employees who are naturally and primarily on board to aid in her navigation. But the opinion in that case describes Howland's duties as follows:

"The 'Moore No. 2' required for its operation two men, one of whom was Captain Marshall and the other Howland. Howland's duties—handling lines, mooring and unmooring the launch, keeping it clean, making small repairs, serving on it while assisting ships entering or leaving the drydock—were severally characterized as those of a deckhand."

The court further pointed out that "most of his working time was in connection with the launch, although infrequently he was given work as a rigger on land, not in connection with said launch." This is in contrast to Weiss, who spent only about half of his time aboard ships. It is apparent that Howland had a much better claim to being a "seaman" than does Weiss. The court, however, held that Howland was not a crew member because "he does not undergo the hardships and dangers, nor does he surrender the personal rights and liberties that a seaman does in binding himself to the vessel as a member of its crew." Howland, like Weiss, was paid an hourly wage, worked an eight-hour day with occasional overtime, and ate and slept on shore.

In holding that Weiss is entitled to maintenance and cure the majority relies on two cases in this Circuit: Pariser v. City of New York, 2 Cir., 1945, 146 F.2d 431, and Buffalo & Grand Island Ferry Co. v. Williams, 2 Cir., 1928, 25 F.2d 612. The latter case was under the Jones Act and involved an accident which occurred long prior to the effective date of the Longshoremen's Act. Thus it relied on the definition of "seaman" in the Haverty case, supra, and has no relevance to our problem. The Pariser case was a Jones Act case which arose after the effective date of the Longshoremen's Act. Although the appellant argued in that case that the plaintiff was not a seaman who could sue under the Jones Act, the briefs made no mention of the Longshoremen's Act or the exclusiveness of its remedies.

The plaintiff, Pariser, was a deckhand on a dredge. We dismissed summarily the contention that he was not a seaman, citing Norton v. Warner Co., supra. We failed, however, to note an important distinction between the cases. The bargeman in the Norton case was continuously aboard the vessel and ate and slept there. Relying on these facts the Supreme Court [321 U.S. 565, 64 S.Ct. 751] pointed out that he had "that permanent attachment to the vessel which commonly characterizes a crew." The record in the Pariser case shows that Pariser did not eat and sleep on the vessel, but remained aboard only during his eight-hour work day. This fact was nowhere mentioned in the opinion of the court. Under these circumstances I think that the Pariser case does not bind us to hold that a man who lives on shore and works eight hours a day on a ship is entitled to maintenance and cure. But even if we regard ourselves as bound by the Pariser case, it is distinguishable from this one for Pariser had worked six weeks on the same vessel. Thus there was far more basis for saying that he had a permanent connection with a ship than there is with respect to Weiss.

The majority also relies on McKie v. Diamond Marine Co., supra; and Early v. American Dredging Co., D.C.E.D.Pa. 1951, 101 F.Supp. 393. I agree with Chief Judge Hutcheson's dissenting opinion in the McKie case, but in any event that case is distinguishable. McKie, although he lived ashore, had permanent employment aboard the dredge and spent all his working time on it or on the dredge tender which towed it around. Thus he had a better claim to the permanent connection with a vessel which is essential for the recovery of maintenance and cure. Moreover, the court in the McKie case determined not that the plaintiff was a seaman but only that it would not upset a jury finding that he was. Chief Judge Hutcheson expressed the view in dissent that since the basic facts were not in dispute the only question was one of law for the court. With this position I agree, and I think my colleagues do also. Since there was no substantial contradiction in the testimony in the instant case, we need not defer to the trial judge's conclusion that the plaintiff was a seaman but may decide that question ourselves on the basis of the facts found below.

The Early case also extends too far the remedy of maintenance and cure, but it too is distinguishable. Early had worked for four months as a deckhand on a particular dredge, he apparently had no shore duties, and he was entitled to eat and sleep on board the vessel although he did not do so.

Finally the majority relies on Bailey v. City of New York, D.C.S.D.N.Y.1944, 55 F.Supp. 699. In that case the plaintiff, a ferryboat engineer, worked eight hours a day, six days a week, and lived at home. I have serious doubt that a ferryboat worker who lives at home and works an eight-hour day like any landlubber can ever be entitled to maintenance and cure. But at least the plaintiff in the Bailey case had been employed for fourteen years by the City of New York as an engineer on its ferryboats. Thus he was in a better position to argue that he was permanently connected with a vessel than Weiss who was only intermittently employed aboard different ships a total of 7 days to replace absentees. It seems to me that the majority here extends the remedy of maintenance and cure to persons for whom the doctrine was never designed and to whom it has never before been applied. Workers like Weiss are more appropriately compensated under the Longshoremen's Act along with other harbor workers who differ from them in no significant way.

Because Weiss is neither a "member of a crew" within the meaning of the Longshoremen's Act nor a "seaman" for purposes of maintenance and cure, I would reverse the judgment below.