**Charles GILLIKIN, Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**No. 85 CV 2582 (TCP).**

United States District Court, E.D. New York.

May 24, 1991.

Paul Matthews, New York City, for plaintiff.

Damon C. Miller, U.S. Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

PLATT, Chief Judge.

By Memorandum and Order dated February 25, 1991, this Court refused to limit plaintiff's claim for maintenance to the amount specified in the collective bargaining agreement negotiated by his union. Because, however, there was no evidence in the record regarding plaintiff's actual expenditures for food and lodging, it directed the plaintiff to submit an affidavit documenting his expenditures in each of these categories during the relevant period. Plaintiff has since submitted that affidavit. The defendant has submitted a response and the plaintiff a reply. Having reviewed the submissions, this Court now finds that the appropriate rate of maintenance in this case is $15.18 per day.

### Plaintiff's Claimed Expenses

The expenses for which the plaintiff seeks reimbursement and the method which he used to compute them are set forth in his affidavit and the accompanying affidavit of his attorney. They are as follows.

During the period of his recovery, plaintiff lived at his home in Virginia Beach, Va. with his wife. His affidavit lists the following actual expenses, computed on an annual basis:

| Expense | Annual Rate | Daily Rate [1] |
|---|---|---|
| Food | $8528 | $23.36 |
| Fuel Oil | $ 925 | $ 2.53 |
| Virginia Power | $ 690 | $ 1.89 |
| Telephone | $ 314 | $ .86 |
| Home Owner's Ins. | $ 141 | $ .39 |
| Real Estate Taxes | $ 794 | $ 2.17 |

Plaintiff does not claim that he made any mortgage payments during this time. His lawyer, however, argues that one of the major expenses of home ownership is the opportunity cost of tying up capital in the form of home equity. He therefore seeks to recover that cost by calculating the interest that might have been earned on plaintiff's equity during this period. Plaintiff has attached an appraisal from a certified real estate appraiser which places the value of his home at $108,050. His attorney seeks to have this Court take judicial notice of the fact that interest rates from April 1984 to February 1989 were high. Specifically he would have it apply a 10% rate, which he states was the prevailing mortgage rate in Virginia Beach at this time. Using these figures, plaintiff computes this "cost" at $200 per week. Plaintiff, of course, does not state that he actually paid any such amount to anyone. Combined with his actual expenditures, plaintiff's weekly estimated cost of lodging amounts to $420, or $60 per day.

Alternatively, the plaintiff has conducted an informal survey of some of the motels in his area and concluded that the expenses of living in such an establishment would be $60 per day, $35 per day for food and $25 per day for the room.

### Discussion

 The right of maintenance entitles a seaman to reimbursement for the cost of food and lodging comparable to that received aboard ship. *Calmar S.S. Corp. v. Taylor*, 303 U.S. 525, 528, 58 S.Ct. 651, 653, 82 L.Ed. 993 (1938). It is, however, subject to several limitations. The seaman may recover maintenance only for the period from that date of injury until the date of maximum cure. *Farrell v. United States*, 336 U.S. 511, 518–19, 69 S.Ct. 707, 710–11, 93 L.Ed. 850 (1949); *Calmar, supra,* 303 U.S. at 530, 58 S.Ct. at 654. He may recover only expenses actually incurred, whether paid or expected to be paid. *Johnson v. United States*, 333 U.S. 46, 50, 68 S.Ct. 391, 393, 92 L.Ed. 468 (1948); *Mahramas v. American Export Isbrandtsen Lines*, 475 F.2d 165, 172 (2d Cir.1973). Finally, he may recover only those expenses which relate to his own sustenance and shelter; the ship-

---

**1.** These figures were generated by the Court, which merely divided plaintiff's figures by 365.

owner is not required to support anyone other than the seaman himself. *Macedo v. F/V PAUL and MICHELLE*, 868 F.2d 519, 522 (1st Cir.1989).

### Expenses Not Paid Out-of-Pocket

■ Applying these rules, it is clear that plaintiff is not entitled to recover the cost of living in a local motel as maintenance. His affidavit indicates that he lived at home during the relevant period and does not indicate that he resided at any time in local motels. Similarly, there is no indication that plaintiff actually paid interest on the equity in his home to anyone or any institution. Absent an indication that plaintiff actually paid out any such amounts, he may not recover them as maintenance. *Johnson, supra,* 333 U.S. at 50, 68 S.Ct. at 393; *Mahramas, supra,* 475 F.2d at 172.

### Food Expenses

■ Plaintiff's claimed food expenses are subject to reduction. Plaintiff's attorney acknowledges that the numbers reported by the plaintiff are undifferentiated expenses of the household.[2] The shipowner, however, is not obliged to reimburse the seaman for the expenses of his entire household, but only for those he incurs on behalf of himself. *Macedo, supra,* 868 F.2d at 522. Given the fact that most households do not keep account of who eats how much and when they do it, it would likely be impossible to determine exactly what amounts are attributable to each person's consumption. Without a more exact measure, the most reliable means of distributing this cost is therefore simply to allocate the cost in equal portions to each member of the household. In his affidavit, plaintiff indicates that his household consisted of his wife and himself during this period. Plaintiff may therefore recover half of the household expenses during this period.

### Lodging Expenses

The measure of plaintiff's recoverable lodging expenses presents a more complicated problem. Only one case has directly addressed whether a seaman who lives at home may recover any of the costs of the operation of that home, concluding that such expenses were recoverable. *Barnes v. Andover Co.,* 900 F.2d 630, 644 (3rd Cir.1990).[3] Defendant nevertheless contends that plaintiff may not recover these expenses because he would have borne

---

**2.** This acknowledgment is implicit. Plaintiff's attorney states that no claim has been made for the value of Mrs. Gillikin's food preparation services because she consumed a portion of the food for which plaintiff seeks reimbursement. Moreover, he does not challenge defendant's argument by asserting that the expenses are his alone, but rather contends that there is not precedent for such a reduction.

**3.** Defendant cites two cases which it argues deny the recovery of home related expenses in such circumstances. *Alexandervich v. Gallagher Bros. Sand & Gravel Corp.,* 298 F.2d 918 (2d Cir.1961); *Harper v. Zapata Offshore Co.,* 741 F.2d 87 (5th Cir.1984). Neither of these cases, however, in fact stand for the asserted proposition. *Alexandervich* does not consider the recovery of such home expenses under the law of maintenance. Rather, it deals with the tort concept of "found." This concept allows a plaintiff to recover as lost wages not only cash wages, but also wages received in kind, such as food or lodging provided aboard ship. *Alexandervich* held that a plaintiff who owned his own home could not recover the costs of such lodging, because to such a seaman the provision of on

board lodging was valueless; in such a case, no in-kind wages were received. 298 F.2d at 922. Maintenance, however, is not compensation for lost wages. It is a support allowance awarded to an injured seaman on the basis of humanitarian and social policy concerns. The seaman's entitlement to the allowance continues beyond the termination of the voyage, the point at which his entitlement to lost wages ceases. *See Calmar,* 303 U.S. at 530, 58 S.Ct. at 654; *Farrell,* 336 U.S. at 520–21, 69 S.Ct. at 711–12. It is also available to seaman who live and eat ashore. *Weiss v. Central R.R. Co. of New Jersey,* 235 F.2d 309, 313 (2d Cir.1956). Thus, the law of "found," as developed in this Circuit, does not require that plaintiff's claims for maintenance be denied. Significantly, the court in *Alexandervich* failed to reduce an award of maintenance to the plaintiff on this same basis. 298 F.2d at 923.

*Harper* notes that the plaintiff recuperated at home with his family and denied plaintiff recovery for lodging expenses. 741 F.2d at 91. It also noted, however, that plaintiff had claimed no actual expenses. *Id.* Its holding, therefore, may not be interpreted as broadly as plaintiff here proposes.

them to house his wife even if he had not been injured. Such expenses, it argues, are not recoverable even though actually incurred, because they are not "additional."

To be recoverable as maintenance, an expense must fulfill three requirements. First, it must be incurred to obtain an item or service which properly falls into the categories of food or lodging. Second, it must be incurred to provide food or lodging to the injured seaman seeking reimbursement. Finally, assuming the first two requirements are met, there must be no significant policy concern militating against recovery of the expense. Applying this analysis, this Court concludes that, with one exception, plaintiff may recover as maintenance the types of expenses he claims.

█ Of the home-related expenses claimed by the plaintiff, only his phone bill may not be recovered as maintenance. The remaining expenses, those incurred for heat, electricity, homeowner's insurance and real estate taxes, are each necessary to the provision of habitable housing and may therefore each be recovered as a lodging expense. As common as telephone service is, it is not an integral element of lodging and therefore may not be recovered. *Barnes*, 900 F.2d at 644.

█ It is also clear that plaintiff incurred a portion of these expenses on his own behalf. During his recuperation, plaintiff lived with his wife in his own home. He paid the bills and enjoyed the product of those expenses: a comfortable living environment. It is therefore appropriate to allocate a portion of these expenses to plaintiff's lodging.

Defendant does not explicitly resist the allocation of a portion of the household expenses to plaintiff. Rather, it relies upon the questionable observation that plaintiff would have borne exactly the same expenses to house his wife in his absence as he bore to house them both

during his recovery. It fails, however, to connect this assertion to the law of maintenance. It does not indicate whether this "fact" indicates that the claimed expenses are solely allocable to the lodging of Mrs. Gillikin, or whether they are allocable to plaintiff, but unrecoverable for some other reason. Because either interpretation is plausible, this Opinion will address both.

Instead of allocating household expenses according to the benefit received from the expenses by each member of the household, the expenses might be distributed on a marginal cost basis. That is, the expense allocable to the individual residents equals the marginal increase in household expenses occasioned by their residence. Under such a scheme, the vast bulk of the household expenses would be attributable to the first or "principal" resident of the household. To this resident would be allocated the marginal cost of running as opposed to not running the household: all of the fixed costs of operation, as well as a large portion of the variable costs.[4] The expense attributable to each additional resident would equal the increase in variable costs occasioned by their presence.

Although theoretically defensible, this method of allocation would produce absurd results in the real world. Accepting, *arguendo*, defendant's implicit assertions that Mrs. Gillikin is the primary resident and that there is no marginal increase in expenses associated with plaintiff's presence at home, application of this approach would result in the conclusion that plaintiff, living in his own home for a period of several years, benefitting from that shelter to the same degree as his wife, and paying all of the bills, was incurring no expenses on his own behalf, but rather only on behalf of Mrs. Gillikin. No matter how selfless a man plaintiff is, this is a preposterous result. Common sense dictates that plaintiff bore these expenses on behalf of both he and his wife, not solely one or the other.

---

**4.** The fixed costs would include such items as taxes and insurance which do not vary with the number of residents. Variable costs include such things as utilities which will increase as the number of potential users increases. It is likely, however, that the bulk of such costs would be attributable to the principal resident. It is not, after all, that much more expensive to heat a home for two than it is to heat a home for one.

Additionally, perhaps because it is at odds with common experience, the identification of the "principal" resident under this approach is somewhat arbitrary. Defendant apparently feels that Mrs. Gillikin is the principal resident in this case, but neglects to offer a rationale to buttress its conclusion. It may be based upon the fact that, prior to plaintiff's injury, his wife lived at the family home and enjoyed the benefits of the expenses associated with it more consistently than did plaintiff. As already pointed out, however, whatever logic there is to this position disappears when the seaman returns and takes up full time residence for a period of years, as he has in this case. Moreover, this position is not inherently more powerful than the argument that plaintiff, as a self-interested breadwinner, was paying the bills to maintain a home for himself between voyages and merely allowing his wife to remain there as a sort of caretaker. In the end, one can dream up any number of rationales to identify one or the other members of a household as the "principal" member and all will sound equally hollow. Families simply do not operate on such a basis. This Court therefore must decline to allocate the expenses before it in that fashion.[5]

Finally, no policy underlying the right of maintenance requires this Court to deny recovery of expenses such as those claimed by the plaintiff here. The shipowner's duty to maintain sick and injured seamen has existed in the common law of this country since 1823. It was originally adopted in response to a set of broad humanitarian and social concerns. At the time of its adoption, courts thought the right necessary to protect seamen cast ashore ill or injured from the threats posed by their condition, by their own bad habits and by poverty, to foster the growth of the merchant marine and to encourage shipowners to look after their seamen with greater vigor. *Harden v. Gordon*, 11 Fed. Cas. no. 6047, p. 480 (C.C.D.Me.1823) (Story, J.). Conscious of these broad social and humanitarian concerns and the sea-

man's status as a ward of the admiralty, the cases have consistently expanded the scope of the right, construing it broadly and resolving all doubts in favor of the seaman. *Vaughan v. Atkinson*, 369 U.S. 527, 531–32, 82 S.Ct. 997, 999–1000, 8 L.Ed.2d 88 (1962). These general concerns and the longstanding interpretive directive that the right be liberally construed, militate in favor of an award to plaintiff in this case. An award would reimburse plaintiff for expenses actually incurred for his support. The result proposed by defendant, on the other hand, would allow the right to be defeated by a narrow and unrealistic allocation of household expenditures.

It is true that courts originally adopted the right to protect those seamen left in foreign ports. Its scope, however, has since been expanded, now reaching any seaman injured in service to a vessel, whether he be a blue water seaman or one who lives and eats ashore. *See Weiss v. Central RR Co. of New Jersey*, 235 F.2d 309, 313 (2d Cir.1956); *Hudspeth v. Atlantic & Gulf Stevedores, Inc.*, 266 F.Supp. 937, 943 (E.D.La.1967). Indeed, in *Weiss*, the Second Circuit upheld an award of maintenance and cure to a ferry deckhand stricken with tuberculosis despite the fact that he had not lived aboard ship and had recovered at home. Unconcerned that the plaintiff lived at home, rather than recuperating abroad, the court referred to maintenance and cure as a "traditional privilege" of all seamen and declined to deny it to the plaintiff merely "because his voyages are short, because he sleeps ashore, or for other reasons his lot is more pleasant than that of most of his brethren." *Weiss, supra*, 235 F.2d at 313. Given that this Circuit does not require that seaman suffer in poverty on an alien shore antecedent to receiving maintenance, this Court can think of no reason why such an award may not be made to a seaman who recuperates at home. *Barnes, supra*, 900 F.2d at 644; *Duplantis v. Williams–McWilliams Industries, Inc.*, 298 F.Supp. 13, 15 (E.D.La.

---

**5.** It might, of course, be a different case if plaintiff had, in fact, paid no more than the marginal costs of his presence.

1969). Without question, homeowners continue to bear certain expenses even after acquiring title. If, as a matter of policy, it is desirable for a shipowner to reimburse a seaman's out-of-pocket lodging expenses, it should not make a difference that the seaman makes his payments to a utility as opposed to a landlord or an innkeeper.

Finally, it could be argued that seamen in like circumstances should not be allowed to recover home expenses as maintenance because such awards would indirectly reduce the amount required to support their families.[6] When, as is the case here, a seaman returns home from the sea and takes up residence, half of the household expenses will be attributable to him, but the total of those expenses will almost certainly not increase by 100%.[7] Thus, because the shipowner must pay the plaintiff's lodging expenses, the absolute amount of household expenses the plaintiff must pay to house the remaining residents will decrease. Maintenance payments in such circumstances may be objected to on the grounds that they constitute a family subsidy which the shipowner is not obliged to provide. *See Macedo, supra*, 868 F.2d at 522.

This position ignores that fact that an award of maintenance in this case would be devoted to defraying plaintiff's living expenses and not solely to the support of his family. That, by happenstance, it produces this additional benefit to the plaintiff is not a reason to deny an award to him. Rather, Courts sitting in admiralty are bound to look after seamen, who are their wards, and to resolve all doubt relating to maintenance in their favor. *Vaughan, supra*, 369 U.S. at 531–32, 82 S.Ct. at 999–1000.

*Conclusion*

For the foregoing reasons, this Court concludes that plaintiff may recover maintenance from defendant at the following daily rate:

| Expense | Annual Rate | Daily Rate |
|---|---|---|
| Food | $4264 | $11.68 |
| Fuel Oil | 462.50 | 1.27 |
| Virginia Power | 345 | .95 |
| Home Owner's Ins. | 70.50 | .19 |
| Real Estate Taxes | 397 | 1.09 |
| | | $15.18 |

This rate represents the half of plaintiff's claimed actual expenses attributable to his own food and lodging, excluding the amount claimed for use of his phone.

Plaintiff's period of recuperation lasted for a period of 1748 days before he reached a state of maximum cure. Defendant's total maintenance obligation therefore amounts to $26,534.64. Of this, defendant has already made payments to the plaintiff of $5,624. Defendant must therefore now pay plaintiff the remaining balance of the payments to which he is entitled, $20,910.64.

SO ORDERED.

---

**6.** This is the second possible interpretation of defendant's argument in opposition to plaintiff's recovery of these expenses.

**7.** Without question there are certain economies involved in the operation of a home. In most cases it will not be not significantly more expensive to house two people in a single dwelling than it is to house one.